# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## FIELD v. THE AUDITOR.

### NOVEMBER 10th, 1887.

1. CONSTITUTION — *Legislature — Governor — Counsel.*— Every resolution requires the consent of both branches of the general assembly before it can become a law. A resolution passed by one branch only, authorizing the governor to employ counsel to consider a claim of the State, confers no power on him to bind the State. Va. Con., art. 4, § 8.

2. IDEM—*Attorney-general — Salary.*—Under Constitution, art. 6, § 8, the legislature hath power to reduce the salary of the attorney-general during his term, there being no limitation of power in that respect as there is as respects the salaries of judges.

3. IDEM—*Duties and compensation of attorney-general—Case at bar.*—It is provided by the general assembly that the attorney-general shall discharge such other duties as may be imposed by it, but shall receive no other compensation than his salary. The attorney-general appeared for the State in certain cases under an act of the general assembly—

HELD :

Those services were covered by his salary.

Error to judgment of circuit court of city of Richmond, rendered at its February term, 1886, in the matter of a petition filed by James G. Field, late attorney-general of Virginia, against Morton Marye, auditor of public accounts of Virginia, in pursuance of section 1, chapter 44, Code 1873 The facts being agreed and put in writing, all matters of law and facts were submitted to the determination of the court, which gave judgment for the defendant. And

the plaintiff moved the court to set aside its judgment and grant him a new trial. This motion the court overruled, and the plaintiff excepted, and the court certified the facts. Opinion states the case.

*Guy & Gilliam,* for plaintiff in error.

*The Attorney-General* (R. A. Ayers) and *W. R. Meredith,* for the defendant in error.

LACY, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of the city of Richmond, pronounced at the February term, 1886. The case is as follows: The plaintiff in error, having filed a claim before the defendant in error as auditor of public accounts of this Commonwealth for $5,100, under the forty-third chapter of the Code, and the same having been disallowed by the said auditor in whole, he filed his petition before the circuit court of the city of Richmond for redress, as is provided by the first section of chapter 44 of the Code. The circuit court of the city of Richmond gave judgment against the petitioner, whereupon he excepted, and moved the court to set aside the said judgment as contrary to the law and the evidence, which motion the court overruled, and the plaintiff excepted and applied for and obtained a writ of error to this court. This claim was based upon alleged services rendered by the plaintiff in error to the Commonwealth of Virginia, as a lawyer; and he afterwards having been appointed by the governor, and later elected, to the office of attorney-general, his account was for services before his appointment in one case, and in other cases claimed to be outside of the regular duties of his office; and he further claimed that his salary as attorney-general having been reduced by the general assembly of

Virginia, in the amount of $1,000 per year on the first day of July, 1878, which was the first year of his term of four years, beginning January 1, 1878, he was entitled to $500 for that year and $1,000 for each of the remaining three years of his term of four years.

To consider these claims in the order stated, we will first consider the charge of $500 for services rendered by him as a private citizen, in the suit by the State of Virginia against Bradley T. Johnson and others  The history of that question, in brief, is as follows : In the spring of 1877 a joint resolution of the general assembly of Virginia having passed the house of delegates, but having failed to pass the senate, Hon. James L. Kemper, then governor of Virginia, being by this resolution authorized to employ able counsel to examine into the question it concerned, concluded to act under the joint resolution aforesaid as a resolution of the house of delegates, and offered to the plaintiff professional employment concerning the same on the sixteenth of May, 1877, which employment was accepted on the eighteenth of the same month, and he entered upon the duties of the same.  Before any report had been made in the premises, on the first of September following, the office of attorney-general becoming vacant by the death of the then incumbent, the governor appointed the plaintiff in error to that office to fill the vacancy in the unexpired term, to which office he was shortly thereafter elected for a full term commencing January 1, 1878, which was for four years; and all the services rendered in the matter after September 1, 1877, were rendered in his capacity of attorney-general.  The governor also appointed Hon. John M. Forbes, of Fauquier county, and Hon. M. B. Seawell, of Gloucester county, counsel along with the plaintiff in this Bradley T. Johnson suit, by whom it was prosecuted to final judgment.  The general assembly afterwards failed to pass a bill to pay the fees charged by these gentlemen,

but the governor paid the plaintiff in error $200 for his services in the nature of a retaining fee out of the contingent fund under the control of the governor; and it is stated at bar here that the general assembly has recently passed a bill to pay Messrs. Forbes and Seawell their fees, and the salary of the attorney-general was regularly paid him, as prescribed by law, during his term. Whether the plaintiff has a claim upon the consideration of the authorities of the State for unpaid services is now the question for this court to consider.

This is a suit against the Commonwealth upon an alleged contract with the State for a debt due him. Is there any such contract by the State, or any legally authorized agent or officer of the State? A joint resolution, to have the force of law, must originate in one house of the general assembly and be approved by the other. "The legislative power of this Commonwealth shall be vested in a general assembly, which shall consist of a senate and house of delegates." Article 5, § 1, Const. Va.; art. 5, § 9, Id. And, moreover (art. 4, § 8), every resolution requiring the assent of both branches of the general assembly shall, before it becomes a law, be presented to the governor. The resolution in question, while it purports to be a resolution of the general assembly, never passed the senate, and never became a law. The governor did not have authority *thereunder* to make any contract for the State, and any contract made by him thereunder does not bind the State. But it appears from the facts of the case that the governor never intended to, and never did, make any contract by which the State was to be bound, and it was understood that the gentlemen employed were to look to the general assembly for compensation for their services. It follows that there is no contract with the State in the matter which the courts can enforce, and the circuit court of Richmond city did not err in so deciding.

We will next consider the claim for an annual salary of $3,500, notwithstanding the act of the general assembly passed March 12, 1877, reducing his salary to the annual amount of $2,500 from and after July 1, 1878. When his term of office began, he was, by virtue of the act of the assembly passed April 4, 1877, entitled to a salary of $3,500 annually. The second section of that act provided as to the duties and salary of the attorney-general as follows:

"Sec. 2. He shall appear as counsel for the State in all cases in which the Commonwealth is interested, depending in the supreme court of appeals, the supreme court of the United States, the district and circuit courts of the United States for the State of Virginia, and the circuit court of the city of Richmond; and he shall discharge such other duties as may be imposed by the general assembly; and he shall receive for his services an annual salary of thirty-five hundred dollars, but he shall not be entitled to receive any fees, perquisites or rewards whatever in addition to the salary aforesaid for the performance of any official duty."

The claim thus set up is founded upon a supposed distinction which is drawn in the State constitution between the language of that instrument concerning the salary of the attorney-general and other officers provided for. Section 8, article 6, provides that "at every election of a governor an attorney-general shall be elected by the qualified voters of this Commonwealth. He shall be commissioned by the governor, perform such duties, and receive such compensation as may be prescribed by law, and shall be removable in the manner *prescribed* for the removal of judges"; the word "prescribed" being employed, which is claimed to mean settle beforehand, and which, being so settled beforehand, it was not intended to leave in the general assembly the power to change it during the term; whereas, as is argued, when the secretary of the Commonwealth, treasurer, auditor, etc., are provided for, it is pro-

vided that "the salary of each shall be *determined* by law" (§ 12, art. 4), and a distinction is sought to be drawn based upon the signification of these two words. This distinction is far from clear. Mr. Worcester defines "prescribed" thus: "To set down authoritatively; to order; to direct; to dictate; to appoint"; while he defines "determined" thus: "To fix permanently; to settle; to adjust." "To set down authoritatively" and "to fix permanently or to settle" do not admit of a wide distinction. But if the framers of our constitution had intended to provide that the salary of the attorney-general should not be diminished during his term of office, it may be reasonably argued that they would have so provided in that instrument in plain terms; for by the twenty-second section of the same article of the constitution, it is provided as to the salary of judges: "Shall receive such salary and allowance as may be *determined* by law, the amount of which shall not be diminished during their term of office." Here they intended that the salary shall be "fixed beforehand and not altered," and they do not use the word "prescribe" but the word "determine," as had been used as to State officers. But while the word "prescribe" is used as to the salary of the attorney-general, the same word is employed a few lines above in speaking of the compensation and tenure of office of the officers of this Commonwealth. We think the duty of prescribing the salary of the attorney-general is a legislative duty and devolves upon the law-making power; and, there being in the constitution no limitation provided against its exercise, it was within the power of the general assembly to pass the act diminishing his salary, to take effect, as this did, after the passage of the act.

As to the other charges for services in the *Gold cases*, the *Roanoke Navigation case*, the *Turnpike case*, and the *County Judges' cases*, the said attorney-general was directed by act of the legislature to appear in them on behalf of the

State; consequently, these duties were imposed by the general assembly and were covered by his salary. Acts 1877–78, p. 174, § 2, ch. 183.

We find no error in the judgment complained of, and the same must be affirmed.

JUDGMENT AFFIRMED.