BULLOCK'S ADMR. vs. W. C. RY.        209

SYLLABUS.

FLORENCE A. BULLOCK, administratrix of HERBERT H. BULLOCK,
    plaintiff below, plaintiff in error, vs. THE WILMINGTON CITY
    RAILWAY COMPANY, a corporation of the State of Delaware,
    defendant below, defendant in error.

*Writ of Error—Statute— City of Wilmington— Streets of City;
    Control of—Council—Police Power—Street and Sewer De-
    partment—Trolley Cars—Fenders—Power to Regulate;
    Where Vested.*

The power and authority to enact ordinances and resolutions requiring and regu-
lating the use of certain safety appliances called fenders, on trolley cars operated in
and upon the streets of the city of Wilmington, is vested in the Board of Directors of
the Street and Sewer Department and not in the Council of said city.

*(January 18, 1905.)*

NICHOLSON, CH., and SPRUANCE and GRUBB, J. J., sitting.

*Robert G. Harman* and *J. Harvey Whiteman* for plaintiff
in error.

*Walter H. Hayes* and *George N. Davis* for defendant in
error.

Supreme Court, January Term, 1905.  Writ of Error to the
Superior Court in and for New Castle County (No. 1, June Term,
1904).

NICHOLSON, CH., delivering the opinion of the Court :

The question before us under this writ of error, is, whether or
not the power and authority to enact ordinances or resolutions re-
quiring and regulating the use of certain safety appliances called
fenders, on trolley cars operated in and upon the streets of the City
of Wilmington is vested in the " Council" of said city.
    The cause was an action on the case, and was argued before the

Superior Court in and for New Castle County on a general demurrer to the seventh count of the declaration, which was as follows:

"(7) For that whereas, the said defendant, heretofore to wit, on the twenty-first day of August, A. D. one thousand nine hundred and three, was and still is a corporation created by and existing under the laws of the State of Delaware, and as such, owned and operated a certain street railway at and within the City of Wilmington, in the County of New Castle aforesaid, and the plaintiff avers that, heretofore, to wit, on the said twenty-first day of August A. D. one thousand nine hundred and three, at the county aforesaid, the said defendant, while engaged in the said business was charged with the duty of using and operating reasonably safe cars equipped with reasonably safe appliances, in accordance with the ordinances, of the Mayor and Council of Wilmington relating thereto, and in particular in accordance with an ordinance relating to the using of fenders on street cars, which ordinance was passed by the Council on the fourth day of December, A. D. one thousand nine hundred and two, and approved by the Mayor on the eleventh day of December, A. D. one thousand nine hundred and two, yet the said defendant disregarding its duty in that hehalf, did not use a fender on defendant's car, said car being No. 142, while the same was being operated by it on Market Street in the City of Wilmington, aforesaid, on the twenty-first day of August, A. D. one thousand nine hundred and three, in accordance with the provisions of the said ordinance requiring said fender to be approved by the Council of the said the Mayor and Council of Wilmington, but on the contrary, the said defendant company did, on the day and year aforesaid, with the car aforesaid, on the street aforesaid, knowingly and unlawfully use a fender on said car which was expressly, and by resolution passed by the Council on the twelfth day of March, A. D. one thousand nine hundred and three, disapproved by the said Council, and by reason thereof, and after it had full knowledge of the passage of said resolution, and at the time and place aforesaid, the said car, while the same was being used and operated on Market

BULLOCK'S ADMR. vs. W. C. RY.          211

OPINION.

Street aforesaid, (said street being then and there a public highway or street upon which tracks of the said railway of the said defendant were laid) ran into the said Herbert H. Bullock, the plaintiff's intestate, while he, the said Herbert H. Bullock, was lawfully crossing the said street, in the exercise of due care and caution on his part, and the said Herbert H. Bullock was thereby and by means thereof, thrown down and under the said car of the said defendant, and was so cut, crushed, shocked, bruised and injured on his body, limbs and head, that he then and there immediately died; that the death of the said Herbert H. Bullock was caused by said negligence of the said defendant, wherefore the said plaintiff saith that she as administratrix, is injured, and hath sustained damages as such administratrix, to the amount of fifteen thousand dollars, and therefore she brings her suit, and the said plaintiff brings into Court here, the letters of administration to her granted by the Register of Wills in and for the County of New Castle aforesaid, the date whereof is a certain day and year therein mentioned, which gives evidence to the Court of the grant of administration to the said plaintiff, as aforesaid.

"And thereupon on motion of the said plaintiff by her said attorney, it is ruled by the Court here that the said defendant answer the declaration aforesaid or judgment will be rendered against them in default."

Whereupon the said defendant on the first day of February, A. D. 1904, to the count aforesaid, filed the following demurrer:

"And now, to wit, this first day of February, A. D. 1904, the said defendant, in the above stated action, by Walter H. Hayes, its attorney, comes and defends the wrong and injuries, when, etc., and says that the seventh count of the said declaration, and the matters therein contained, in manner and form as the same are above stated and set forth, is and are not sufficient in law for the said plaintiff, to have or maintain her aforesaid action thereof against the said defendant, and it the said defendant, is not bound by law to answer the same. And this it is ready to verify, wherefore by reason of the insufficiency of the said declaration, and the said count

thereof in this behalf, the said defendant prays judgment, and that the said plaintiffs may be barred from having or maintaining her aforesaid action thereof against it, etc."

Whereupon a joinder in demurrer was entered.

After argument on the demurrer in the Court below, the demurrer was sustained and final judgment entered thereon for the defendant at the election of plaintiff's counsel of record.

Thereupon the plaintiff sued out this writ of error, the single assignment of error being as follows:

" And thereupon the plaintiff below, appellant, by Robert G. Harman and J. Harvey Whiteman, her attorneys, comes into Court and says, that in the record, proceeding and judgment of the Court below, there is manifest error in this:

"*First.* That the Court below erred in sustaining the demurrer of the defendant below, to the seventh count of the declaration of the plaintiff below, appellant, and in rendering judgment thereon for the defendant below, whereas the plaintiff below insists that the said demurrer should have been overruled, and the judgment of the said Court below should have been rendered on the seventh count above mentioned, in favor of the said plaintiff below.

" Wherefore the plaintiff below, appellant, prays that the judgment of the Court below may be reversed."

On the one hand, the contention of the plaintiff in error, is, that the authority to pass said ordinance has been and still is largely in the " Council " by virtue of the Act of Assembly of 1883 creating the government of the City of Wilmington.

On the other hand, the defendant in error, while admitting that such authority, if it did exist at all, was originally in the " Council," contends that it was removed and taken away from the " Council " and lodged in the " Board of Directors of the Street and Sewer Department " by the Act of Assembly entitled " An Act Relating to the Streets and Sewers of the City of Wilmington," passed at Dover, April 20, 1887, being *Chap. 188, Vol. 18, Delaware Laws,*

BULLOCK'S ADMR. vs. W. C. RY.          213

OPINION.

It is argued with great ingenuity by counsel for plaintiff in error that the above cited act which created the Street and Sewer Department gave that department only such enumerated powers, as they classify in their brief as follows, to wit :

"(1)   To extend and widen old streets and open new streets (*Charter, Sec. 115 and p. 140*).

"(2)   To pave and repair the sidewalk from curb to building line (*Charter, Sec. 119*).

"(3)   To pave the streets and repair the same from curb to curb (*Charter, Sec. 118*).

"(4)   To lay the curb of the sidewalk (*Charter, Sec. 119-21*).

"(5)   To condemn private property, to extend, widen and open streets, (*Charter, Sec. 116 and p. 143*).

"(6)   To open streets, to lay and repair sewers and drains therein (*Charter, Sec. 134 and p. 141*).

"And for these PURPOSES AND OBJECTS of the Act the Street and Sewer Department was given the powers formerly possessed by the ' Council ' and none other."

And they contend that the power to pass such an ordinance as the Fender Ordinance in this suit belonged to the city " Council " in the exercise of its police power concerning the public safety, and that such power and authority has not been taken from it by any or all of the acts which created the several departments that now perform the most important functions of a municipal government in the City of Wilmington.

Counsel for defendant in error, on the other hand, quote at length in their brief from Section 31 of the Act of 1883 creating the government of the City of Wilmington, being *Chap. 207*, *Vol. 17*, *Delaware Laws*, which is as follows :

" The Council may also pass ordinances to define and remove nuisances, to ascertain and fix the boundaries of streets, squares, lanes and alleys, or to repair and amend the same, and to provide for the paving thereof, or to alter, extend, or widen any street, square, lane or alley, or open and lay out new ones, subject to the provisions in that behalf hereinafter contained ; to regulate and fix

the ascent and decent of all streets, lanes and alleys; to direct the paving of footways and prescribe the width thereof; to direct the laying out of gutters and to prescribe the depth thereof; to prescribe the extent of steps, porches, cellar doors and other inlets to buildings; to provide night watches, and for the lighting of streets at the expense of the corporation, *and generally to prescribe and regulate the use of the highways, streets, squares, lanes and alleys of the city, and to have and exercise control over the same,* subject to the provisions in that behalf hereinafter contained, and to the general supervision and control of the General Assembly; * * * and in general shall have power to do all those matters and things for the well being of the said city, which shall not be in contravention of any existing laws of this State or the Constitution thereof.

"Passed April 13, 1883."

And they then quote from Sections 1 and 4 of " An Act in Relation to the Streets and Sewers of the City of Wilmington," passed April 20th, 1887, being *Chap. 188, Vol. 18, Delaware Laws, as follows:*

"That on and after the first day of July, A. D. 1887, ' The Mayor and Council of Wilmington,' a corporation of the State of Delaware, is hereby authorized through the agency of a board of directors of a ' Street and Sewer Department' hereby created, constituted and appointed their successors in office, further to extend or widen any street, square, lane, road or alley laid down upon the map, plan or ground plot of the City of Wilmington, and likewise to lay out all necessary new streets, squares, lanes, roads or alleys within said city, except where heretofore expressly prohibited by legislative enactment still subsisting, and after the time aforesaid, to have entire jurisdiction and control within the limits of said city, of the streets, squares, lanes, roads or alleys thereof, said jurisdiction and control to extend from building line to building line, and the entire jurisdiction and control within the limits of said city of the drainage thereof, and may open gutters, drains and sewers within the limits thereof, and regulate, maintain, cleanse, and keep the same and the natural water courses, runs and rivulets, within said

BULLOCK'S ADMR. vs. W. C. RY. 215

OPINION.

limits, open, clear and unobstructed, and further, shall after the time aforesaid, have the same rights and powers, and be vested with the same authority over the said streets, squares, lanes, roads, alleys, gutters, drains, sewers, natural water courses, runs and rivulets within the limits of said city, as are now held and exercised by 'The Council' of the said City of Wilmington, under the charter, laws, ordinances and regulations appertaining to or in any manner made for the government of said city. The said directors of the Street and Sewer Department shall also, after the first day of July, A. D. 1887, have jurisdiction and control over the removal of all ashes, dirt and other rubbish incidental to housekeeping within said city as fully and completely as 'The Council' aforesaid, has heretofore had and exercised said jurisdiction and control.

" SECTION 4. * * * The said directors of said street and sewer department shall after the time last aforesaid, have control of all matters relating to said streets, squares, lanes, roads, alleys, gutters, drains, sewers, natural water courses, runs or rivulets; and all the machinery, tools, buildings, rights, franchises, books, accounts and other property of whatsoever nature or kind appertaining to the management of said streets, squares, lanes, roads, alleys, gutters, drains, sewers, natural water courses, runs and rivulets, in virtue of any law, ordinance, rule or regulation, now or hereafter in force. In carrying out and effecting the purposes and objects in this act, the said board of directors shall stand in the same position as is now occupied by 'The Council', and shall after the first day of July A. D. 1887, so far as the purposes and objects of this Act are concerned be substituted for 'The Council' aforesaid, with the same rights, powers, privileges and authority, as were before the passage of this act, by any means whatsoever vested in 'The Council' aforesaid : Provided," etc.

They also cite the Act Establishing a Board of Water Commissioners, passed April 18, 1883, being *Chap. 205, Vol. 17, Delaware Laws*, and the Act Providing for a Municipal Police Commission for the City of Wilmington, passed May 15, 1891,

being *Chap. 223, Vol. 19, Delaware Laws,* which provides in Section 4 that " in carrying out and effecting the purposes and objects of this act the said Board of Commissioners shall stand in the same position as is now occupied by the Mayor, and shall, after the first day of May A. D. 1891, so far as the purposes and objects of this act are concerned, be substituted for the Mayor aforesaid, with the same rights, powers, privileges and authority as were before the passage of this act by any means whatsoever vested in the Mayor aforesaid."

These acts taken together effect the partition of municipal authority in the City of Wilmington.

In the act of 1883 above cited the Council was invested with authority " to prescribe and regulate the use of the highways, streets, squares, lanes and alleys of the city " as well as to control their construction and repair, the making and keeping them fit for use as public highways.

It is impossible not to regard ordinances or resolutions requiring the use of safety appliances—fenders so called—on street cars when using the streets, as a species of regulation of the use of the streets and such an ordinance or resolution must be sustained, if at all, as being a reasonable regulation of the manner in which the streets may be used by the street railways as public highways. The act creating the Street and Sewer Commission after giving the board of directors specifically all the enumerated powers necessary to enable them to make the streets of the city what they should be as public highways, adds that they, the Board, " shall have entire jurisdiction and control within the limits of the said city of the streets, squares, lanes," etc., and again " that they shall have the same rights and powers, and be vested with the same authority over the said streets, squares, lanes, etc., as are now held and exercised by the Council."

And finally " in carrying out and effecting the purposes and objects of this act the said board of directors shall stand in the same position as is now occupied by ' The Council 'and shall after the first day of July, A. D. 1887, so far as the purposes and objects of

BULLOCK'S ADMR. vs. W. C. RY.        217

OPINION.

this act are concerned, be substituted for 'The Council' aforesaid with the same rights, powers, privileges and authority, as were before the passage of this act, by any means whatsoever vested in 'The Council' aforesaid."

Is it possible to hold that these powers did not include a substitution of the Street and Sewer Commission in place of "The Council" for regulation of the use, as well as for construction and repair?

The purpose and object of the Street and Sewer Act was manifestly to take the whole subject matter of the construction, and also the regulation of the use of the streets, etc., from "The Council" just as the purpose of the Water Commission Act was to take it away as to water, and of the Police Board Act as to the police. And at the same time to give the Street and Sewer Commissioners the power to see that the streets of Wilmington should be so constructed and *used*, so far as it lay within the power of the municipality, in a manner which would make them both fit and safe for the uses of a public highway.

In other words, prior to the Act creating the Street and Sewer Commission that power had been entrusted to 'The Council' by the language above quoted from the act of 1883, but by the act creating the Street and Sewer Commission its board of directors was substituted for it.

If "The Council" possessed, prior to that act, the power to prescribe the use of a fender, it clearly possessed it as being a reasonable regulation of the manner of using the streets or city highways, and just as clearly such power was divested by the act of 1887 creating the Street and Sewer Department, and vested in its board of directors.

It is immaterial for the decision of this case whether that particular regulation rests ultimately upon what is called the "police power" or not, for the whole subject being vested in "The Council" by the provisions giving it the power to prescribe and regulate the use of the streets, etc., was by the act of 1887 transferred to

the Board of Directors of the Street and Sewer Commission. Therefore, as contended by the defendant below, " The Council," the defendant in error, had not the power to pass an ordinance prescribing and regulating the use of safety appliances called " The Fender Ordinance ;" and the judgment below sustaining the demurrer is affirmed inasmuch as it does not appear that the Board of Directors of the Street and Sewer Commission had required the use of any such fender as that mentioned and described in the seventh count of the plaintiff's declaration to which defendant demurred.

Judgment below affirmed.