SAMUEL CUTRONA, trading as Wilmington-New Castle Bus Line,

Complainant Below, Appellant;

*vs.*

THE MAYOR AND COUNCIL OF WILMINGTON, a Municipal Corporation of the State of Delaware.

Defendant Below, Appellee.

*Supreme Court, On Appeal, Nov.* 28, 1924.

A municipal corporation has no power except by express legislative grant, or by fair and necessary implication because of being incident to the powers expressly granted or essential to carrying them out.

Under 17 *Delaware Laws, c.* 207, authorizing City Council to "prescribe and regulate" use of streets, and 18 *Delaware Laws, c.* 188, creating Street and Sewer Department, and conferring upon the board of directors thereof "entire jurisdiction and control" of streets, the Street and Sewer Department could prohibit operation of busses on streets without permit from the department, notwithstanding 32 *Delaware Laws, c.* 115, 33 *Delaware Laws, c.* 121, and 26 *Delaware Laws c.* 206, since the word "jurisdiction" means power and authority, and the word "prescribe" has a broader meaning than the word "regulate," and is defined to mean to lay down authoritatively as a guide, direction, or rule.

32 *Delaware Laws, c.* 115, authorizing Mayor and Council of city to require license fees from owners of motor vehicles carrying passengers for hire

operating in city, is purely a revenue measure, and does not affect rights previously granted to Street and Sewer Department by 18 *Delaware Laws, c.* 188, conferring on the board of the department entire jurisdiction and control of city streets.

Legislature, within the prescribed constitutional limitations, has exclusive power to make laws.

Generally, legislative construction of a statute is entitled to consideration, and will in some cases be controlling, but it cannot authoritatively declare what the law is or has been; such function being one for the court.

A municipal corporation is a branch of the state government.

Legislature has right to take from department of city government powers previously given.

26 *Delaware Laws, c.* 206, providing for public utility board of city with "supervision over all public utilities operating within the limits of the city," does not preclude Street and Sewer Department, created by 18 *Delaware Laws, c.* 188, with "entire jurisdiction and control" of city streets, from prohibiting operation of busses on streets without permit from the department, under such *Chapter* 188, and 17 *Delaware Laws, c.* 207, giving the city the right to "regulate" the use of streets on theory that jurisdiction is vested in such public utility board, since right of "supervision" does not give the board the right to grant or refuse a franchise, permit or other right to use streets.

Regulation of Street and Sewer Department prohibiting operation of busses without permit under 17 *Delaware Laws, c.* 297, and 18 *Delaware Laws, c.* 188, *held* valid as against contention that Legislature, by 32 *Delaware Laws, cc.* 115, 193, and 33 *Delaware Laws, c.* 5, has impliedly recognized the lawfulness of the business of operating motor busses for transportation of passengers for hire on public highways.

APPEAL FROM COURT OF CHANCERY. The Street and Sewer Department of the City of Wilmington adopted an ordinance or resolution on the thirty-first day of March, 1922, entitled "A Resolution Fixing the Terms and Conditions under Which Motor Busses may Operate on and over the Streets of the City of Wilmington and Providing Penalties for Violation."

This resolution, among other things, makes it unlawful "for any person, either as principal or as agent, servant or employee, to use or occupy, for the purpose of operating a motor bus thereon, any street within the City of Wilmington without first obtaining a permit to do so."

It defines "motor bus" to "mean and include every mechanic-

ally propelled vehicle, not operated on rails or fixed tracks, which is used or engaged in the transportation of persons for hire"; specifically excluding, however, certain kinds or classes of vehicles, none of which are material to the consideration of this case and which, therefore, need not be enumerated.

It further provides that an application for a permit to operate a motor bus shall be made to the Board of Directors of the Street and Sewer Department of the city, and that said application shall be accompanied by a map of the route proposed to be used by the applicant; the termini of such proposed route and certain other information with respect to the number of busses intended to be used, their make, arrangements, capacity, the proposed schedule, etc. No fee or charge is exacted for such permit.

It also provides that—

"Upon the filing of such application, it shall be given consideration by said Board at its next regular meeting. If such application be granted, said board shall issue such permit after the filing of the liability insurance policy, hereinafter provided for."

The provisions of such liability insurance policy are set forth in detail.

By amendment to said resolution or ordinance passed October 16, 1922, the Board of Directors of the Street and Sewer Department is authorized in its "absolute discretion" to—

"suspend temporarily or * * * revoke the permit granted to any person hereunder, whenever such person or any driver or conductor of such motor bus, or any other servant, agent or employee of such person, shall be *found* by said Board to have violated any of the provisions of this resolution or of any ordinance of the City of Wilmington, Delaware, or of any resolution of the said Board regulating traffic upon or the use of the streets of the said city, or the use or operation of any motor bus thereon or for such other reason as to the said Board may seem sufficient.

"Whenever a permit shall be so revoked, no new permit shall be issued to such person until the expiration of at least one year from the date of said revocation."

Certain requirements as to the equipment, operation and maintenance of motor busses and certain traffic regulations are specifically set forth in the resolution and penalties in case of conviction by the Municipal Court of the violation of any of its provisions are also inserted.

On the nineteenth day of June, 1919, pursuant to *Chapter* 127, *Volume* 30, *Laws of Delaware*, and, therefore, prior to the adoption of the above resolution, the City Council had passed an ordinance requiring the payment of a yearly license by every person operating a motor vehicle and charging fees for the transportation of passengers within the City of Wilmington; said license to be operative for one year from the first day of July of the year in which it should be issued.

Cutrona, the complainant below, the appellant in this court, applied to the City Council of Wilmington in February, 1922, and secured such license for the three busses owned and intended to be operated by him between the City of Wilmington and the town of New Castle. He also secured such licenses prior to June 1st of that year and annually thereafter.

Pursuant to applications from the appellant, the Board of Directors of the Street and Sewer Department also granted him permits to operate such busses on certain streets in the City of Wilmington in carrying passengers to and from the town of New Castle and to and from intermediate points during the year 1922.

Like permits were granted to him by the same Board for the year 1923, expiring on December 31st of that year. All of these permits were pursuant to and specifically referred to the resolution of the Street and Sewer Department of March 31, 1922.

A permit to operate an additional or fourth bus on the same route was also granted February 27, 1923, but this permit was surrendered to the Street and Sewer Department in November, 1923. These facts were admitted.

The evidence taken in the court below is not included in the record, but it appears from a stipulation of counsel sent up with the record that during the year 1923 the inspector of the Street and Sewer Department observed various infractions of the regulations of that Department by the persons operating the busses of the appellant, particularly with respect to overcrowding and deviation from the prescribed route for the purpose of delivering passengers.

It also appears that these matters were brought to the attention of the Board at its meeting of July 10th and September 18th, 1923, on both of which occasions the appellant, Cutrona,

was warned that his permits would be revoked if there were further violations of the regulations of the Department; but there is nothing to show that there was any hearing before the Board or any specific findings by it.

It further appears that certain operators or drivers of the appellant's busses were convicted on several occasions in the years 1922 and 1923 of violating the State Traffic Laws, but none of these offenses were committed in the City of Wilmington or had any relation to the regulations of the Street and Sewer Department or to the ordinances of the city.

Cutrona, the appellant, was, however, convicted on the fourth day of January, 1924, of violating the regulations of the Street and Sewer Department.

It is also admitted that the appellant duly applied in the month of November, 1923, for renewals, for the year 1924, of the permits under which the three busses then operated by him were being run, and that on or about the third day of January, 1924, he received the following letter from the Street and Sewer Department, dated January 2, 1924, refusing to grant his applications:

"The Board of Directors of this Department, at their regular meeting held December 31, 1923, considered your application for renewal operating bus permits for 1924 for your three busses to operate over certain streets of this city in connection with the operation of a public motor bus line between Wilmington and New Castle, Delaware.

"The subject of renewing your operating permits has been given long and serious thought by this Board, and it is the unanimous opinion of the Board, that, on account of the number and the seriousness of the reports and charges made to this Department against the reckless and unlawful manner in which the busses of your line have been operated during the past year, for the best interest of the traveling public, your operating permits should not be renewed, and you are hereby notified that your 1923 operating permits are extended until January 15, 1924, at which date said operating permits for the City of Wilmington will be revoked."

The agreement of counsel above referred to also shows that the busses operated by the appellant were of the type ordinarily used for such purpose and that all State laws, with respect to procuring operator's licenses, public service permits, etc., for the year 1924 had been duly complied with before January 1st of that year

and before the action of the Street and Sewer Department, in refusing his application for permits for that year.

On January 14, 1924, Cutrona, the appellant, filed a bill in equity against the City of Wilmington, seeking to enjoin it from enforcing the above mentioned resolution of the Board of Directors of the Street and Sewer Department against him.

There was no allegation or proof of fraud and after a hearing on bill, answer and testimony, the Chancellor dismissed the bill. See *ante p.* 208. Cutrona appealed from the decree of the Chancellor to this court and filed the following assignments of error:

"1. That the Court below erred in dismissing the bill of complaint filed in said cause, and in dissolving the temporary injunction theretofore issued in said cause.

"2. That the Court below erred in refusing to issue a permanent injunction against the respondent below, appellee, as prayed for in the bill of complaint.

"3. That the Court below erred in refusing to issue a mandatory injunction to the Board of Directors of the Street and Sewer Department, as prayed for in the bill of complaint.

"4. That the Court below erred in holding that the resolution of the Board of Directors of the Street and Sewer Department of March 31, 1922, as amended on October 16, 1923, was valid.

"5. That the Court below erred in holding that the said resolution, as amended, was reasonable."

PENNEWILL, C. J., and RICE, HARRINGTON, RICHARDS and RODNEY, J. J., sitting.

*Ayres J. Stockly* and *Clarence A. Southerland,* for the appellant.

*Caleb S. Layton,* City Solicitor, for the appellee.

HARRINGTON, J., delivering the opinion of the court:

The facts show that the Street and Sewer Department neither suspended nor revoked appellant's permits to operate his busses over the streets of the City of Wilmington in the transportation of passengers between that city and the town of New Castle and intermediate points, but that such Department, acting under the resolution of March 31, 1922, refused to grant him operating permits for the year 1924.

It also appears from such facts that this resolution made it unlawful for the appellant to operate his busses on the streets of the City of Wilmington, without having first secured permits from the Street and Sewer Department of the city; and that no limitations or conditions were imposed on the right of the Street and Sewer Department to grant or refuse such permits.

This case, therefore, squarely raises two questions:

1st. Admitting for the sake of argument that the Legislature gave the Street and Sewer Department the right to enact an ordinance or resolution making it unlawful to operate a motor bus for the transportation of passengers for hire on the streets of the City of Wilmington, without a permit from that Board, could such an ordinance legally give that Department the absolute power to grant or refuse the permits provided for regardless of whether its action in the particular case should be reasonable or otherwise?

2nd. Did the Board of Directors of the Street and Sewer Department of the City of Wilmington have the requisite legislative authority to pass such a resolution, or was their power confined to the enactment of ordinances merely regulating and controlling the operation of such busses in a reasonable manner?

The Chancellor decided both of these questions in favor of the City of Wilmington.

Any consideration of the first question is rendered unnecessary by the admission in appellant's brief that the State by proper legislative action could not only have regulated or controlled any business conducted on the public streets and highways of the State, but that it could also have prohibited such business; and by the further admission that the State by appropriate legislation could have delegated its authority in this respect to the City of Wilmington.

The second question is, therefore, the only question that need be considered by us.

In *Ex parte Dickey*, 76 *W. Va.* 576, 85 *S. E.* 781, *L. R. A.* 1915F, 840, the court, in considering the right of a municipal corporation to prohibit the use of its streets by motor busses for the transportation of passengers for hire said:

"Plainly, therefore, the result of this inquiry depends, not upon the power of the Legislature over the subject-matter of relator's alleged right, but upon

the *action* of the Legislature respecting the same. That he has no natural or indefeasible right to maintain upon a public highway a vehicle for the carriage of passengers for hire is unquestionable."

That a municipal corporation has no power except by express legislative grant or by fair and necessary implication, because of being incident to the powers expressly granted or essential to carrying them out, is beyond question. *Coyle v. McIntire,* 7 *Houst.* 44, 30 *Atl.* 728, 40 *Am. St. Rep.* 109; *Gray v. Wilmington,* 2 *Marv.* 257, 43 *Atl.* 94.

The City of Wilmington was incorporated in 1882 by *Chapter* 207, *Volume* 17, *Laws of Delaware.* Among other things its charter authorized the Council to enact ordinances "generally to prescribe and regulate the use of the highways, streets, squares, lanes and alleys of the City, and to have and exercise control over the same * * * subject * * * to the general supervision and control of the General Assembly."

The Legislature, by Act of April 20th, 1887 (*Chapter* 188, *Volume* 18, *Laws of Delaware*), subsequently created the Board of Directors of the Street and Sewer Department of the city and conferred upon that Board "entire jurisdiction and control within the limits of said city of the streets, squares, lanes, roads or alleys thereof, said jurisdiction and control to extend from building line to building line." In addition to the language above quoted, this act also provided that said board should—

"have the same rights and powers, and be vested with the same authority over the said streets, squares, lanes, roads" etc., " * * *  as are now held and exercised by 'the Council' of the * * * city * * * under the charter, laws, ordinances and regulations appertaining to or in any manner made for the government of said city."

The meaning of the language used and, therefore, what powers were granted to the city or its Street and Sewer Department by the acts above quoted, is for us to determine.

It appears from such acts that the Legislature first gave the City Council in its charter the right by ordinance, "generally to prescribe and regulate the use" of the city streets and to "exercise control" over them. It subsequently created the Street and Sewer Department of the city, not only giving it "entire jurisdiction

and control" over such streets but also in the same act, in general
and sweeping language, transferred all the rights, powers and
authority that the City Council had over them to that Department.

The appellant contends that the city, acting through its
Street and Sewer Department, merely had the power to regulate
the use of the public streets and that the power to prohibit their
use, even though for business purposes, was not included in that
power.

In support of this contention he cites the following cases:
*Merritt v. Toronto*, 25 *Ont.* 256; *Purvis v. City of Ocilla*, 149 *Ga.*
771, 102 *S. E.* 241; *City of Elkhart v. Lipschitz*, 164 *Ind.* 671, 74
*N. E.* 528; *Quigg v. State*, 84 *Fla.* 164, 93 *So.* 139; *Ex parte Theisen*,
30 *Fla.* 529, 11 *So.* 901, 32 *Am. St. Rep.* 36; *City of Burlington v.
Bumgardner*, 42 *Iowa*, 673; *Ex parte Patterson*, 42 *Tex. Cr. R.*
256, 58 *S. W.* 1011, 51 *L. R. A.* 654.

As the language used is not confined to the word "regulate,"
but also includes other language of the broadest import, it is not
necessary for us to determine that question. The following cases
are, however, instructive in determining to what extent the power
to regulate the use of the streets may ordinarily justify a pro-
hibition of their use. *Attorney General v. Boston*, 142 *Mass.* 202,
203, 7 *N. E.* 722; *St. Louis v. Western Union Telegraph Co.*, 149
*U. S.* 465, 13 *Sup. Ct.* 990, 37 *L. Ed.* 810; *Ex parte Patterson*, 42
*Tex. Cr.* 256, 58 *S. W.* 1011, 51 *L. R. A.* 654. See also the follow-
ing cases construing the clauses of the Federal Constitution
authorizing Congress to regulate commerce between the states:
*Lottery Case*, 188 *U. S.* 321, 23 *Sup. Ct.* 321, 47 *L. Ed.* 492; *U. S.
v. Popper*, (*D. C.*) 98 *Fed.* 423; *Bennett v. U. S.*, 194 *Fed.* 630, 114
*C. C. A.* 402; *U. S. v. Hoke*, (*D. C.*) 187 *Fed.* 992; *Reid v. Colorado*,
187 *U. S.* 137, 23 *Sup. Ct.* 92, 47 *L. Ed.* 108; *Addyston Pipe &
Steel Co. v. U. S.*, 175 *U. S.* 226, 20 *Sup. Ct.* 96. 44 *L. Ed.* 136.

The words "entire jurisdiction and control," used with re-
spect to the powers of the Street and Sewer Department over the
public streets of the City of Wilmington, are words of simple im-
port that would seem to require no interpretation. The word "ju-
risdiction," however, clearly means "power" or "authority."
2 *Words and Phrases, Second Series*, *p.* 1276. As thus defined, the
words used are almost identical with the words "exclusive control

and power," used in the City Charter involved in *Greene v. San Antonio,* (*Tex. Civ. App.*) 178 *S. W.* 6. In that case the court on a reargument of the case said:

"Appellant desired to use the streets for private purposes of gain, and the City has the absolute right to prohibit the use of the streets for his private business, and in case it gave permission for such use had the right to compel the payment of a license fee."

In *West, et al., v. City of Asbury Park*, 89 *N. J. Law*, 402, the language of the charter with respect to the authority of the city over its streets was very general. In construing this language the court said:

"We think all the provisions [of the ordinances] we have recited are well within the expressed powers given to the council, or within the powers necessarily inferred from the general clause. That like powers may be implied from the general control of streets has long been settled. We need refer only to the leading case of *Commonwealth v. Stodder*, 2 *Cush.* 562."

But as we have already seen by reference to the City Charter, the power "to prescribe * * * the use" as well as the power to "regulate the use" of the city streets was also given to the Street and Sewer Department. The word "prescribe" ordinarily has a broader meaning than the word "regulate." It has been variously defined to mean "to lay down authoritatively as a guide, direction or rule; to impose as a permanent order; to dictate; to appoint; to direct; to give as a guide, direction or rule of action; to give law." *Loewy v. Gordon*, 129 *App. Div.* 459, 114 *N. Y. Supp.* 211; *People v. The Board of Estimates*, 146 *App. Div.* 515, 131 *N. Y. Supp.* 604; *Heiferman v. Scholder*, 134 *App. Div.* 579, 119 *N. Y. Supp.* 520; *Mansfield v. The People*, 164 *Ill.* 611, 45 *N. E.* 976. See also substantially to the same effect, *Field v. The Auditor*, 83 *Va.* 882, 3 *S. E.* 707.

The same word has also been defined to mean "to fix definitely." *Shannon v. The Village of Hinsdale*, 180 *Ill.* 20, 54 *N. E.* 181, and in *Field v. The Auditor*, 83 *Va.* 882, 3 *S. E.* 707 (*supra*), the court pointed out that the distinction between the word "prescribe" and the word "determine" was far from clear.

When, therefore, the meaning of the word "prescribe," as above defined, is read in connection with the word "use," as well

as in connection with the words "entire jurisdiction and control," it is clear that the Legislature intended to grant broad powers over the city streets to the Street and Sewer Department, and that the enactment of the ordinance of March 31, 1922, requiring a permit to use such streets for the operation of motor busses transporting passengers for hire, was within the powers granted that Department.

*Bullock v. The Wilmington City Ry. Co.*, 5 *Penn.* 209, 64 *Atl.* 242, is in no way inconsistent with this conclusion. While the same statutes involved here were considered by the court in that case, the sole question was whether the Street and Sewer Department or the City Council of Wilmington, had the right to impose certain regulations as to the equipment of trolley cars used on the streets.

That the city, acting either through its Council, or its Street and Sewer Department had the right to impose the regulations in question was, however, conceded.

It is true that the Legislature on April 27, 1923 (*Chapter* 121, *Volume* 33, *Laws of Delaware*), passed the following act:

"That the Street and Sewer Department of the City of Wilmington is hereby given the power and authority to determine over what streets of said city motor or automobile busses of over seven passenger capacity, for hire, shall operate, and the said Street and Sewer Department may also determine the number of licenses which shall be issued to busses for operation, for hire, on any streets of the said city."

It is urged that this act conclusively shows that the Legislature had not previously intended to give either to the city or to its Street and Sewer Department the power to prohibit the business of operating motor vehicles for transportation of passengers for hire on its streets.

We are, however, unable to agree with this contention.

This act does not purport to take away any of the powers over the City streets previously granted to the Street and Sewer Department. The terms of the act creating that Department are broad and sweeping and, as we have already said, clearly include the powers purported to be granted to the same Department by the subsequent act.

The Act of March 31, 1921 (*Chapter* 115, *Volume*, 32 *Laws of Delaware*), authorizing the Mayor and Council of Wilmington to

require license fees from the owners of all motor vehicles carrying passengers for hire operating in the city, is purely a revenue measure and in no way affects the rights previously granted to the Street and Sewer Department.

Notwithstanding that fact, the Legislature must have questioned whether the effect of this act was to transfer jurisdiction over the kinds of motor busses referred to in it to the City Council and must have passed the Act of April 22, 1923, to prevent the possibility of any such construction. That being true, the Act of April 27, 1923, merely constituted a legislative declaration or construction of the meaning of the prior act, and, therefore, of the powers of the Street and Sewer Department.

The Legislature, within the prescribed constitutional limitations, has the exclusive power to make laws.

It is true, as a general rule, that its construction of a statute is entitled to consideration and will in some cases be controlling, but that it cannot authoritatively declare what the law is or has been, is well settled. That is a judicial function belonging to the court. *Lewis' Sutherland on Statutory Construction, secs.* 358, 576. In the latter section the learned author said:

"So far as an act in terms professes to declare the past or present meaning of an existing statute, it is not legislative and not binding on the courts."

In *Jones v. Wootten,* 1 *Harr.* 77, in discussing this question, the court said:

"If that act is to be considered as an act declaratory of what the law was before its passage, it cannot as such have any weight with the court. Each department of our government must operate and be confined within its constitutional limits. The power that makes, is not the power to construe a law. The Legislature may declare what the law shall be, but not what it is or has been. That power belongs to the judicial department alone, and they in discharging their duty are to form their own opinion, and are not to be the mere organ of the Legislature and declare its opinion of what the law is or has been. This proposition is one so clear that the Supreme Court of the United States, in the case of *Ogden v. Blacklidge,* 2 *Cranch,* 977, declined hearing an argument in its support, and stopped the counsel who was about to sustain it."

See, also, to the same effect *Com. v. Warwick,* 172 *Pa.* 140, 33 *Atl.* 373; *People v. Supervisors,* 16 *N. Y.* 425, 431; *Gough v.*

*Pratt,* 9 *Md.* 526, 532; *Watson, et al., v. Hoge,* 7 *Yerg.* (*Tenn.*) 344-353.

In *Rosencrans v. U. S.,* 165 *U. S.* 257, 17 *Sup.* Ct. 302, 41 *L. Ed.* 708, the Supreme Court of the United States used the following apt language:

"When there are statutes clearly defining the jurisdiction of the courts the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation. In other words, where Congress has expressly legislated in respect to a given matter that express legislation must control, in the absence of subsequent legislation equally express, and is not overthrown by any mere inferences or implications to be found in such subsequent legislation."

It is true that the facts of the case cited differ from the present case, but the same principles apply to the statute involved here.

The powers of the Street and Sewer Department must, therefore, depend upon the provisions of the act creating that Department and the intent of that act is in no way affected by the subsequent acts above referred to.

The Public Utility Act of March 29, 1911, applying to the City of Wilmington (*Chapter* 206, *Volume* 26, *Laws of Delaware*) is also relied on as showing that the Legislature, notwithstanding the broad language of *Chapter* 118, *Volume* 18, *Laws of Delaware,* never intended to give the Street and Sewer Department absolute and entire jurisdiction and control over the streets of that city.

After providing for a Public Utility Board, *Section* 4 of the Utility Act provides:

"The said Board shall have supervision over all public utilities operating within the limits of the  *  *  *  city of Wilmington; and the term 'public utilities' as used in this act is herein defined to include all street railway, express, traction, gas, electric light, heat and power, water, telephone and telegraph corporations, associations or joint stock companies operating within the limits of the city of Wilmington for public use."

This act does not support the appellant's contention.

Granting for the sake of argument that by it the Legislature gave to the Public Utility Board some of the same powers that it had previously given to the Street and Sewer Department, that fact does not in any way affect the construction of the Street and Sewer Department Act.

A municipal corporation is a branch of the State government, and in passing the Utility Act, the Legislature merely exercised an undoubted right to take from that department of the city some of the powers that it had originally delegated to it.

Independent of the rights expressly reserved in the statute, its right to do this is clear. *Lewis' Southerland on Statutory Construction, Sec.* 1310; *New England Telephone and Telegraph Co. v. Boston Ter. Co.*, 188 *Mass.* 397, 65 *N. E.* 835; *United R. R. & Canal Co. and Pa. R. R. Co. v. Jersey City*, 71 *N. J. Law*, 80, 58 *Atl.* 71. This fact, therefore, throws no light whatever on the intent of the Legislature with respect to the provisions of the act creating the Street and Sewer Department.

One of the questions before us is whether the Street and Sewer Department in 1922 had the power to pass the ordinance in question or whether such power, if it ever existed, was then vested in Utility Commission of the City of Wilmington by the act of March 29, 1911, above referred to.

This act gave the board created by it "supervision over all public utilities operating within the limits of the city." Regardless of whether the act itself does or does not specify what shall be considered a public utility within its meaning, such act has never been construed to authorize the Utilities Commission to grant or refuse a franchise, permit or other right to use the city streets; and no such right could arise from the language used. The board is merely given "supervision" over the utilities "operating" within the city. No such powers could ordinarily be implied from the word "supervision" even if it were not used in connection with the word "operating." *McCarthey v. Board of Supervisors of Co. Merced*, 15 *Cal. App.* 576, 115 *Pac.* 458; *N. Y. Life Ins. Co. v. Rhodes*, 4 *Ga. App.* 25, 60 *S. E.* 828, 831; 4 *Words & Phrases, Second Series, p.* 797.

It is further argued that the Legislature, without expressly granting the right, has by regulatory legislation impliedly recognized the lawfulness of the business of operating motor busses for the transportation of passengers for hire on the public highway of the State, and that the City of Wilmington, therefore had no power to interfere with that right with respect to the use of the public highways within its limits.

In support of this contention, the appellant refers to the to the Act of March 28, 1921 (*Chap.* 193, *Vol.* 32, *Laws of Delaware*), to the Act of March 27, 1923 (*Chap.* 5, *Vol.* 33, *Laws of Delaware*) and to the Act of March 3d, 1921. (*Chap.* 115, *Vol.* 32, *Laws of Delaware*).

The Act of March 28, 1921, authorizes the Secretary of State to revoke or suspend the operating license of any person who is shown to be incompetent to operate a motor vehicle, providing for an appeal by the aggrieved party to the Court of General Sessions.

The Act of March 27, 1923, merely provides that on and after the first day of January, 1924—

"No person shall operate a public service motor vehicle transporting passengers for hire upon any public street or highway of the state until he shall have obtained and is in possession of a public service motor vehicle driver's permit issued to him by the state, and no person whose occupation is that of driving a motor vehicle for a resident of the state for hire, shall operate such motor vehicle upon any public street or highway of the state until he shall have obtained and is in possession of a chauffeur's license issued to him by the state."

That the Act of March 3d, 1921, is purely a revenue measure has already been stated.

Even conceding the correctness of the principle relied on, where the Legislature has neither prohibited nor authorized the prohibition of the use of the streets of the city by motor vehicles of the kind in question (*Dickey v. Davis*, 76 *W. Va.* 576, 85 *S. E.* 781, *L. R. A.* 1915F, 841), we are unable to see how the statutes in question have any application to appellant's contention.

It is also clear from the facts of this case that no question of interurban bus lines is involved; that being true, neither *Argenta v. Keath*, 130 *Ark.* 334, 197 *S. W.* 686, *L. R. A.* 1918B, 888; *Dent v. Oregon City*, 106 *Or.* 122, 211 *Pac.* 909, nor the provisions of other municipal charters of this State need be considered by us.

For the reasons above given the decree of the court below is affirmed.