ERNEST A. SIMON, HARRISON M. MANNING, IRA W. WHEAT-
LEY, ALEXANDER H. LORD, ROBERT B. ELLIOTT, ISIDORE
STEPHANY, E. CLARENCE VINCENT, WILLIAM I. MES-
SICK, HOWARD F. ALLEN, MONROE H. ADAMS, MADI-
SON WILLIN, EDWARD J. WINDER, RICHARD H. GERKER,
JAMES E. DUTTON, SR., KARL K. BROWN, JAMES
FRIEDEL, T. SCOTT PURSE, J. EMORY MILES, CHARLES
J. WEST, JOHN J. KINDER, CHARLES M. HOLLIS, WIL-
LIAM T. LANK, J. THERON STUART, W. HARRY BROWN,
HARRY M. BELL, JULIAN G. WEBSTER, C. M. CHASE, C.
B. BRADLEY, JAMES E. DUTTON, JR., ALBERT E. CHIP-
MAN, WILLIAM B. MILLER, W. D. STEVENS, MRS.
GEORGE H. HUSTON, and EASTERN SHORE PUBLIC SERV-
ICE COMPANY, a Corporation of the State of Delaware.

Complainants Below, Appellants,

*vs.*

THE TOWN OF SEAFORD, a Municipal Corporation of the
State of Delaware, HARRY A. PHILLIPS, MARTIN N.
WILLEY, HOWARD H. MORGAN, ALBERT J. LANK and
HARLAN A. WILLIN, Individually and as Members of
the Council of the Town of Seaford, and GEORGE W.
DONOHO, Mayor Thereof, SEAFORD LIGHT & POWER
Co., a Corporation of the State of Delaware, FAIR-
BANKS, MORSE & Co., a Corporation of the State of
Illinois, and DONOVAN CONSTRUCTION CORPORATION, a
Corporation of the State of Minnesota,

Defendants Below, Appellees.

*Supreme Court, On Appeal, February 15, 1938.*

LAYTON, C. J., and HARRINGTON, RICHARDS, RODNEY, and SPEAKMAN, *JJ.*, sitting.

*James M. Tunnell, Caleb S. Layton,* of the firm of Richards, Layton & Finger, and *Frank M. Jones,* for appellants.

*Ralph S. Baker,* for appellees, the town of Seaford, George W. Donoho, Mayor, and Harry A. Phillips, Martin N. Willey, Howard H. Morgan, Albert J. Lank, and Harlan A. Willin, comprising the council of said town.

*James R. Morford* and *William H. Bennethum,* of the firm of Marvel, Morford, Ward & Logan, for appellees, Seaford Light & Power Co. and Fairbanks, Morse & Co.

SPEAKMAN, J., delivering the opinion of the court:

The appellants have advanced three points in support of their contentions. They will be considered in their numerical order.

The first is:

Point 1. "The charter of the Town does not authorize the Town to purchase a plant for the manufacture and distribution of electricity for light, heat and power purposes. Therefore, the agreement between the Seaford Company and the Town conferring upon the latter the option to purchase the electric plant to be erected by the Seaford Company is *ultra vires* and beyond the lawful powers of the Town."

It is well settled in this State that a municipal corporation has no power except by express legislative grant, or by fair and necessary implication because of being incident to the powers expressly granted or essential to carrying them

out. *Drexler v. Com'rs., of Bethany Beach,* 15 *Del. Ch.* 214, 135 *A.* 484; *Cutrona v. Wilmington,* 14 *Del. Ch.* 434, 127 *A.* 421; *Coyle v. McIntire,* 7 *Houst.* 44, 30 *A.* 728, 40 *Am. St. Rep.* 109; *Gray v. Wilmington,* 2 *Marv.* 257, 43 *A.* 94.

The powers of a municipality are of two classes. The one legislative, public and governmental in the exercise of which it is a sovereignty and governs its people, and the other proprietory not for the purpose of governing its people, but for the private advantage of the inhabitants of the city.

As a representative of the State a municipal corporation has imparted to it inherent police power. In the exercise of its proprietary or business powers, acting through its officers, it is to a large extent governed by the same rules which control a private individual or a business corporation.

It is quite difficult to draw a clear and definite line of distinction between municipal duties and powers which are governmental and those which should be described as corporate in their character.

It is the contention of the appellants that the establishment of an electric plant by a municipality represents the exercise of a proprietary function.

On the other hand, the appellees claim that the Town of Seaford has the implied power to establish an electric lighting plant as an incident to its police power. The appellees also claim that the authority to acquire such a plant exists under the express power contained in the Town's charter (*Section* 19 *of Chapter* 153, *Vol.* 29, *Laws of Delaware*), by which it is authorized to make ordinances, rules, regulations and by-laws "for the good government and welfare of said town," and also under the provisions of two enabling acts, the first of which was approved April 20, 1933 (*Chapter* 121, *Vol.* 38, *Laws of Delaware*), by which

the Town was authorized to borrow money, "which shall be applied, appropriated and expended for the purpose of lighting the Town of Seaford and furnishing electric light for private use, either by the establishment of a proper electric light plant, by purchase or otherwise, or by the purchase or construction of an electric light distributing plant to distribute electric power sufficient to properly light said Town and furnish light and power for private use," and the other of which was approved December 14, 1933 (*Chapter 25, Vol. 39, Laws of Delaware*), by which the Town was authorized to borrow money and issue bonds on the credit of the Town "to provide funds for the erection, the extension, the enlargement or the repair of any plant, machinery, appliances or equipment for the supply, or the manufacture and distribution of electricity or gas for light, heat or power purposes."

It is urged by the appellants that notwithstanding the fact that the Act of April 20, 1933, provided that the Town could acquire an electric plant "by purchase or otherwise" that by the subsequent Act of December 14, 1933, the inference is irresistible that the Legislature intended to exclude the powers to "purchase" an electric plant, and that now the power of the Town to acquire an electric plant is limited to the power to acquire one by "erection;" that there is nothing in the word "erect" that is involved or ambiguous; that it must be given its ordinary and popular significance, and that the power to "erect" an electric plant does not indicate any legislative intention to confer upon the Town the power to "purchase" an electric plant erected and owned by another.

For the determination of this case it is not necessary to consider these contentions.

The Council of the Town has not entered into an agreement to purchase an electric plant. An acceptance by the Town of the offer contained in the letter of September 5, 1936, would at most be nothing more than an agreement

that the Town should have the right to acquire an option to purchase such a plant at a determinable price within a stipulated time. It would be at no expense to the Town and in no way binding on the Town, and no presumption would arise therefrom that the Council would commit the Town to a binding obligation until it had a right to do so.

It is the right and the duty of the governing body and officers of every city and town to determine what is necessary and proper to be done for the future as well as the present improvement and development of the municipality and for the promotion of the health, safety and general welfare of its inhabitants.

We do not hesitate in saying that if in the judgment of the Council it was deemed expedient and proper for the Town to acquire a municipally owned electric plant by purchase or otherwise, it had the power and authority to make all necessary preliminary arrangements therefor, provided it did not unduly commit the Town to a binding contract in the absence of legal authority. It is not conceded that the right to erect a plant does not include the right to purchase a plant, but as to this we express no opinion.

The next contention is:

Point II. The option to purchase granted by the Seaford Company to the Town and the franchise granted by the Town to the Seaford Company are part and parcel of the understanding between said parties and constitute the contract between them. Since the execution of the option agreement by the Town is *ultra vires,* the franchise granted to the Seaford Company must necessarily be declared void, for the two are indivisible and the invalidity of the one destroys the other.

It is not necessary to consider the question raised by this point, in view of the conclusion reached by us concerning the first point.

The remaining contention is:

Point III. Assuming, *arguendo*, that the Town has the lawful power to purchase the electric plant to be erected by the Seaford Company, nevertheless, the option granted to the Town is so indefinite and vague in its terms that it does not constitute a valid and binding obligation; and since it is part and parcel of the understanding between the parties and, together with the franchise, constitutes the contract between them, the invalidity of the option invalidates the franchise.

The appellants contend that by reason of the language, "2. Type and capacity of plant and cost thereof to be mutually agreed upon between Seaford Light and Power Company and the Town Council of Seaford," contained in the offer in the letter of September 5, 1936, the acceptance thereof by the Council did not create a valid option. They rely on the rule stated in *Williston on Contracts, Vol.* 1, § 45, as follows:

> "Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if something is reserved for the future agreement of both parties the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such promise."

We cannot conceive that anyone will question the soundness of this rule. See *Universal Products Co. v. Emerson,* 6 *W. W. Harr.* 553, 36 *Del.* 553, 179 *A.* 387, 100 *A. L. R.* 956.

The Town is, of course, entitled to receive just what it contracted for by way of consideration for the grant of the license or franchise. It is not denied that it will receive the problematical consideration of the advantage derived by its inhabitants by reason of the erection and operation of a plant and in addition thereto annual payments of $2500.00 during the term of the license or franchise and a stipulation that the rates charged for electric service would

not be in excess of the rate charged by the Eastern Shore Public Service Company. Whether it will also receive anything by way of consideration by reason of the so-called option, is dependent upon its legal effect. The Town will derive from the so-called option such rights, if any, as accrue thereunder. If no rights accrue, that will not affect the grant of the license or franchise, because so far as any consideration is necessary to support the grant, there is ample for that purpose.

It is claimed by the appellants the permit or franchise would not have been granted if the offer of September 5, 1936, had not been made. The letter containing the offer is attached to the answer of The Town of Seaford and the Mayor and Members of the Council therof, as an Exhibit, and the answer admits with respect thereto, "that it has at all times been the intention of the Town Council of Seaford and of said Seaford Light & Power Co. that the said proposed electric plant and distribution system would be erected and installed by said Seaford Light & Power Co. and would be operated by it under the supervision and direction of said Fairbanks, Morse and Co. until such time as the Town of Seaford would see fit to exercise the contemplated option," and after averring that it would be detrimental and against the best interest of the Town to have two competing electric utility companies supplying light and power to the inhabitants of the Town, it is averred in the answer that, "Particularly would this be detrimental and against the best interests of the Town of Seaford in view of the contemplated plan for the acquisition by said Town of a municipally owned and operated plant through the exercise of the option for the purchase of said plant from Seaford Light & Power Co.," and the appellants also rely on the following testimony of Albert J. Lank, a member of the Council and one of the defendants in the hearing before the Chancellor:

"Q. And wasn't there an offer submitted to the electrical com-

mittee of the Town Council by the Seaford Light and Power Company, an option to purchase the plant within five years?

"A.  Yes.

"Q.  And wasn't that considered a part of the offer?

"A.  Yes.

"Q.  And that was considered a part of the offer, because if the Town Council wanted to take over the plant within the period of five years they could do it?

"A.  That matter would have to be submitted to the voters before they could do it; but that was the sole intent.

"Q.  Nevertheless that option was considered by the committee along with the franchise, was it not?

"A.  Yes.

"Q.  And as a part of it?

"A.  Yes.

"Q.  Would you have adopted that ordinance (the franchise) if the option had not been submitted by the Seaford Light and Power Company, along with its proposal in connection with the franchise?

A.  I don't think so."

The testimony of Albert J. Lank has no probative value. It is only the opinion of a member of the Council as to what the Council as a whole would have done if the offer of September 5, 1936, had not been made.

We are unable to determine from the record what action the Council would have taken if the said offer had not been made.

There is no error. The decree appealed from is affirmed. A mandate will be signed in accordance herewith.