LESLIE QUIGG, CHIEF OF POLICE OF CITY OF MIAMI, DADE COUNTY, FLORIDA, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *ex rel.*, E. H. RADEL, JR., *Defendant in Error*.

Opinion filed August 2, 1922.

Petition for rehearing denied August 17, 1922

The charter power of the City of Miami "to license, control, tax and regulate traffic and sales upon the streets, sidewalks and public places within the city * * * and to license and cause

to be registered, and control, tax and regulate carriages, automobiles, motor buses, cars, wagons, drays, jitney buses and other vehicles," does not confer authority to wholly prohibit the operation of jitney buses on the streets of the city; nor does the general welfare power clauses authorize a prohibition of use when such vehicles are not shown to be inherently dangerous to those who travel the streets.

A Writ of Error to the Circuit Court for Dade County, H. Pierre Branning, Judge.

Affirmed.

*A. J. Rose,* for Plaintiff in Error;

*Geo. A. Worley & Son ,L. A. Harris, W. F. Perry* and *G. C. McClure,* for Defendant in Error.

WHITFIELD, J.—In habeas corpus proceedings before the Circuit Judge it appeared that E. H. Radel, Jr., was held in custody under a conviction in the municipal court for operating a jitney bus on certain streets, a violation of an ordinance of the city of Miami. The validity of the ordinance was challenged. To an order of the Circuit Court discharging the petitioner, a writ of error was allowed and taken under the statute. After reciting the conditions that prompted its adoption, the ordinance provides: "That for the purpose of this ordinance, a jitney bus is defined to be any vehicle other than a street railway car operated upon the streets of the city of Miami for the purpose of receiving, carrying and discharging as passengers for hire such persons as offer themselves for transportation, or operated in such a manner for hire as to offer a means of transportation similar to that afforded by the street railway car:

"*Section* 2.   That no jitney bus shall operate on the following streets:

"On Flagler Street from First Avenue east to Northwest Third Avenue.

"Nor on Flagler Street from Sixth Avenue West to Sixteenth Avenue West.

"Nor on Northwest First Avenue from Flagler Street to Northeast Thirteenth Street.

"Nor or Northeast Thirteenth Street between Northeast First and Second Avenues.

"Nor on Northeast Second Avenue from Northeast Thirteenth Street to Northeast Thirty-Sixth Street.

"*Section* 3.   That any person found guilty of the violation of this ordinance shall be subject to a fine not exceeding one hundred dollars ($100.00) and imprisonment not exceeding thirty (30) days, or both such fine and imprisonment, at the discretion of the court."

Under its charter the city has general welfare powers and also specific power "To license, control, tax and regulate traffic and sales upon the streets, sidewalks and public places within the city—and to license and cause to be registered, and control, tax and regulate carriages, omnibuses, motor buses, cars, wagons, drays, jitney buses and other vehicles."

The city has only such powers as are confered upon it by its charter or by law.   See Florida Cent. & P. R. Co. v. Ocala St. & S. R. Co., 39 Fla. 306, 22 South. Rep. 692; *ex parte* Davidson, 76 Fla. 272, 79 South. Rep. 727.

Manifestly the express power "to license, control, tax and regulate traffic   *   upon the streets   *   and to

license and cause to be registered, and control, tax and regulate * jitney buses and other vehicles,'' does not confer authority to wholly prohibit the operation of jitney buses on streets of the city. Nor does the general welfare power clause authorize a prohibition of use when such vehicles are not shown to be inherently dangerous to those who travel the streets. Curry v. Osborne, 76 Fla. 39, 79 South. Rep. 293. If they are dangerously operated, that can be remedied by proper regulation, even to the extent of exclusion from use of the streets for not observing permissible regulations that may be enforced in the interest of the public safety and convenience. There is authority to license and to regulate the operation of such vehicles and all other when they are being used on the streets; and such authority contemplates full regulation in the interest of the public welfare; but prohibition of such use in toto is obviously not contemplated by the express authority to license, tax, control and regulate. See Malone v. City of Quincy, 66 Fla. 52, 62 South. Rep. 992. Lawful regulation may partially prohibit by limiting and controlling the use; but it may not totally prohibit. Under the charter the city may regulate the use of jitney buses on the streets in any reasonable way that conserves the public welfare, and in doing so may circumscribe their privileges in the use of the streets; but no authority for the quoted ordinance entirely excluding jitney buses from streets, is shown.

Affirmed.

BROWME, C. J., AND TAYLOR, J., concur.

ELLIS AND WEST, J. J., dissent.

WEST, J., Dissenting.—From the doctrine that a city

has only such powers are are conferred by its charter or by-laws, as announced in the opinion, there will of course be no dissent. But from the conclusion that, tested by this rule, the ordinance under consideration is invalid because no basis is found for it in the powers granted the city, there may be. The contrary, it seems to me, is susceptible of demonstration.

In addition to the power quoted in the opinion, the city possesses by virtue of express charter provision, as shown by the record, pertinent powers as follows:

"(1)    Paragraph P.   Section 3.   'And generally to define, abate, suppress, and prevent all things detrimental to the health, morals, comfort, convenience and welfare of the residents of the city.'

"(2.)    Paragraph Y. Section 3.   'To exercise full police power and establish and maintain a department or division of police.'

"(3) Paragraph 2.   Section 3. 'To do all things whatsoever necessary or expedient for promoting or maintaining the general welfare, comfort, education, morals, peace, government, health, trade, commission or industry of the city or its inhabitants.'

"(4)    Paragraph AA.   Section 3.   'To make and enforce all ordinances, rules and regulations, necessary or expedient for the purpose of carrying into effect the powers conferred by this charter, or by any general law and to provide and impose suitable penalties.'

"(5)    Paragraph HH.   Section 3.   'To license, control, tax and regulate traffic and sales upon the streets, sidewalks and public places within the city—and to license and cause to be registered, and control, tax and regulate

carriages, omnibuses, motor buses, cars, wagons, drays, jitney buses and other vehicles.' "

The ordinance, for the violation of which the petitioner, defendant in error, was tried and convicted in the municipal court, was presumably ordained pursuant to these charter provisions and upon the assumption that it was within the granted powers.

The ordinance, including the preamble in which the reasons impelling its enactment are expressed, is as follows:

## "ORDINANCE No. 55.

"An ordinance Defining Jitney Busses and Providing that no Jitney Bus Shall Operate on Flagler Street from First Avenue East to Northwest Third Avenue, nor on Flagler Street from Sixth Avenue West to Sixteenth Avenue West, nor on Northeast First Avenue from Flagler Street to Northeast Thirteenth Street, nor on Northeast Thirteenth Street between Northeast First and Second Avenues, nor on Northeast Second Avenue from Northeast Thirteenth Street to Northeast Thirty-Sixth Street, and Providing a Penalty for a Violation Thereof, and Declaring this an Emergency Ordinance.

"Whereas, the City of Miami, Florida, has more automobiles per capita than any other city of the United States; and,

"Whereas, the number of automobiles is greatly augmented during the winter or tourist season; and,

"Whereas, the streets hereinafter mentioned and designated are principal business streets of Miami and are extremely narrow and altogether inadequate for the accommodation of the traffic; and,

"Whereas, there are now two forms or modes of passenger transportation operating upon and over parts or sections of said streets, one in the form of an electric street railway system operating trolly cars, and the other in the form of jitney busses; and,

"Whereas, the operating of these two systems of passenger transportation upon and over certain parts or sections of said streets increases the traffic congestion on said streets; causes great inconvenience to the public, and in addition thereto imperils life and endangers the property of the public; and,

"Whereas, said traffic congestion is a nuisance which can only be relieved by forbidding said jitney busses from operating over certain parts or sections of said streets on which said electric street railway tracks are laid; and,

"Whereas, the operation and maintenance of both of said passenger transportation systems over and along certain parts or sections of said streets are unnecessary for the accommodation of the public; and

"Whereas, the City of Miami has recently purchased from said traction company all of its property, real and personal, together with all its rights, privileges and franchises in and over said streets, and has improved said traction service so as to accommodate, serve and satisfy the public; and

"Whereas, the jitney service can be confined to other designated business streets of the City of Miami without any inconvenience to the public;

"Now, therefore, Be It Ordained By the Commission of the City of Miami:

"Section 1. That for the purpose of this ordinance, a jitney bus is defined to be any vehicle other than a street railway car operated upon the streets of the City of Miami for the purpose of receiving, carrying and discharging as passengers for hire such persons as offer themselves for transportation, or operated in such a manner for hire as to offer a means of transportation similar to that afforded by the street railway car;

"Section 2. That no jitney bus shall operate on the following streets:

"On Flagler Street from First Avenue East to Northwest Third Avenue.

"Nor on Flagler Street from Sixth Avenue to Sixteenth Avenue West.

"Nor on Northeast First Avenue from Flagler Street to Northeast Thirteenth Street.

"Nor on Northeast Thirteenth Street between Northwest First and Second Avenues.

"Nor on Northeast Second Avenue from Northeast Thirteenth Street to Northeast Thirty-Sixth Street.

"Section 3. That any person found guilty of the violation of this ordinance shall be subject to a fine not exceeding one hundred dollars ($100.00) and imprisonment not exceeding thirty (30) days, or both such fine and imprisonment, at the discretion of the court.

"Section 4. This ordinance is declared to be an emergency measure on the ground of urgent public need for the preservation of peace, health, safety and property, and is passed by a vote of not less than four-fifths, (4/5) of the members of the Commission.

"Passed and adopted on its first reading by title only this 10th day of January, 1922.

"Passed and Adopted on its second and final reading and read in full this 7th day of February, 1922."

The decisive question in the case is whether the ordinance is within the grant of power contained in the charter. Its determination requires a consideration of the following general principles:

The state may, by legislative enactment consistent with organic law, delegate such measure of its legislative power as it deems best to a municipal corporation. Sec. 8, Art. VIII Const. of Fla.; Withnell v. Ruecking Const. Co., 249 U. S. 63; St. Louis v. Western Union Tel. Co., 149 U. S. 465; Roby v. Shunganunga Drainage Dist., 77 Kan. 754, 95 Pac. Rep. 399. It has, and may exercise through its legislature, plenary control over its public highways, including city streets. Stewart v. DeLand-Lake Helen S. R. & B. Dist., 71 Fla. 158, 71 South. Rep. 42; County Comm'rs Duval County v. City of Jacksonville, 36 Fla. 196, 18 South. Rep. 339; State ex rel. v. Jacksonville Street R. R. Co., 29 Fla. 590, 10 South. Rep. 590; Grand Trunk Western Ry. Co. v. City of South Bend, 227 U. S. 544.

Jitney Buses as ordinarily operated are common carriers and their use of or operation upon public highways may be regulated and controlled. Their routes, fares to be charged, schedules and termini upon streets of a city may be regulated by legislative enactment. Power to do so may be delegated to municipal corporations or public service commissions. Dickey v. Davis, 76 W. Va. 576, 25 S. E. Rep. 871, L. R. A. 1915F, 840 and note; Smith v. Nunnelly (W. Va.) P. U. R. 1915E, 177; Dresser v. City of Wichita, 96 Kan. 820, 153 Pac. Rep. 1194; Huston v. City of Des

Moines, 176 Ia. 455, 156 N. W. Rep.883; Louden v. Starr, 171 Ia. 528, 154 N. W. Rep. 331; City of Memphis v. State ex rel. Ryals, 133 Tenn. 83, 179 S. W. Rep. 631, L. R. A. 1916B, 1151 and note; State ex rel. Stephenson v. Dillon, 82 Fla. 276, 89 South. Rep. 558.

The right to prosecute one's business for private gain on highways constructed and maintained at public expense is not an inherent or vested right, but is a franchise which may be granted or withheld as the legislature sees fit. City of Memphis v. State ex rel. Ryals, supra; Hadfield v. Lundin, 98 Wash. 657, 168 Pac. Rep. 516; Cummins v. Jones, 79 Ore. 276, 155 Pac. Rep. 171; State ex rel. Schaffer v. City of Spokane, 109 Wash. 360, 186 Pac. Rep. 864; Dresser v. City of Wichita, supra; West v. City of Asbury Park, 89 N. J. Law, 402, 99 Atl. Rep. 190; Peters v. City of San Antonio (Tex. Civ. App.) 195 S. W. Rep. 989; Greene v. City of San Antonio (Tex. Civ. App.) 195 S. W. Rep. 989; Greene v. City of San Antonio (Tex. Civ. App.) 178 S. W. Rep. 5; Dickey v. Davis, supra; Schoenfeld v. City of Seattle, 265 Fed. 726.

In Dickey v. Davis, supra, the supreme court of West Virginia said: "The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the runing of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature.

This distinction, elementary and fundamental in character, is recognized by all the authorities."

In City of Memphis v. State ex rel. Ryals, supra, the supreme court of Tennessee said: "It is too clear for extended discussion that it was competent for the Legislature under the police power to regulate the use of the streets and public places by jitney operators, who, as common carriers, have no vested right to use the same without complying with a requirement as to obtaining a permit or license. The right to make such use is a franchise, to be withheld or granted as the Legislature may see fit."

Legislation having for its object the regulation and control of the use of public highways by motor driven vehicles is an exertion of the police power. Hendrick v. Maryland, 235 U. S. 610; Schoenfeld v. City of Seattle, *supra*. And that an exactment intended to conserve and promote the safety and general welfare is likewise an exertion of the police power, needs no citation of authority in support of it.

Whatever may be the rule elsewhere, in this jurisdiction a motor vehicle operated on a public highway is regarded as a dangerous instrumentality. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 South Rep. 629, 16 A. L. R. 255.

The charter confers upon the city power "to define * * * suppress, *and prevent all things detrimental to the* * * * *safety,* convenience, and welfare *of the residents of the city*s" "*to exercise full police power;*" "to license, control * * * and regulate *traffic* * * * *upon the streets* * * * within the city" and to "license * * * and *control,* tax and regulate * * * *jitney buses*" (italics supplied) operating upon the streets.

For the purpose of carrying into effect the powers conferred, the city is expressly authorized to make and enforce ordinances, rules and regulations necessary or expedient to that end.

The ordinance is not dependent for its validity upon the grant of power to the city "to control traffic  *  *  * upon the streets" and to "control, tax and regulate * * * jitney buses." This is probably sufficient basis for the ordinance. It, however, does not rest upon this grant alone. In addition to this, power generally "to define * * * and prevent all things detrimental to the safety, convenience and welfare of the residents of the city" is also conferred. So that the police power of the state that may be exerted to promote the safety and welfare of the citizens of the state, to the extent that it may be necessary, is granted to the city, and this ordinance, as appears from its preamble, is in exercise of this grant. In State ex rel. Stephenson v. Dillon, supra, a similar ordinance enacted under the charter was held by this court to be an exertion of this power.

Applying the principles announced, the ordinance may be upheld, in so far as this case presents the question, as within the charter grant, either upon the theory that it controls traffic upon the streets of the city, which is incidental to the operation of a private enterprise for private gain, and restricts such traffic to certain designated streets, and controls and regulates jitney buses employed in the conduct of such enterprise, which is in the nature of a franchise from the city and which may be granted or withheld at the city's will; or upon the theory that its object is to promote the public "safety, convenience, and welfare of the residents of the city" in the use of public streets in certain congested districts by excluding therefrom a cer-

tain class of traffic employing a recognized dangerous agency.

There is no merit in the contention that the classification contained in the ordinance is arbitrary and unreasonable. . That the "jitney," with the transportation afforded by it, as generally defined, is in a distinctive class and thereby subject to legitimate classification for regulation and control in its operation upon public streets, is upheld generally by the authorities referred to in this opinion..

Ownership by a municipality of the street car system operated in the city or that an ordinance, if enforced, would result in benefit to a street railway company operating its lines upon streets of the city, has no effect upon the *power* of the city to regulate traffic by jitneys or other motor driven vehicles upon its streets by valid ordinances having for their object the public safety, convenience and welfare. Schoenfeld v. City of Seattle, supra; Dresser v. City of Wichita, supra.

The fact that the ordinance seems to be directed against a cheap form of transportation, much as it may be desired and popular as it probably is, is no ground for striking down the ordinance by the courts. Considerations of public safety produced by conditions recited in the preamble may justly be regarded as of paramount importance. The ordinance excludes "jitneys" from certain designated streets. It does not affect their operation over other streets but leaves their owners free to conduct their business on all other streets except those indicated. Besides, this is a legislative question. A sound public policy expressed by valid legislative enactment has referred this subject to local governmental agency with ample authority in the electorate to redress wrongs and remedy action considered inimicable to public interest. If the ordinance is unsound in policy, the

citizenship of the municipality may change it by appealing to the governing body of the city or by an intelligent exercise of the right of franchise.

Being of the opinion that the ordinance is within the grant of power contained in the charter, I respectfully dissent.

ELLIS, J., concurs.