27093. JEWEL TEA CO. v. CITY COUNCIL OF AUGUSTA.

DECIDED DECEMBER 5, 1938. REHEARING DENIED DECEMBER 17, 1938.

*Bussey & Fulcher,* for plaintiff.

*C. Wesley Killebrew,* for defendant.

MacINTYRE, J. "In the absence of Federal regulation and control the States have the undoubted right to regulate motor vehicles

operating for hire as common carriers." Pond on Public Utilities, 769, § 708. However, a city ordinance contravening the common right can not be legally passed unless power to do so be plainly conferred by valid, competent, legislative grant. The ordinary use of the streets for delivering and transportation of goods by the owners to and from their residences and places of business is the usual and ordinary right of the citizen, a common right, a right common to all. The original charter of the City of Augusta, approved January 31, 1798, stated in part as follows: "And they shall also be vested with full power and authority from time to time under their common seal, to make and establish such by-laws, rules, and ordinances respecting the arbor, streets, public buildings, markets, walls, public houses, carriages, wagons, carts, drays, pumps, buckets, fire engines, the care of the poor, the regulation of disorderly people, negroes, and in general every other by-law or regulation that shall appear to them requisite and necessary for the security, welfare and convenience of said city, or for preserving peace, order, and good government within the same." The city, on December 7, 1936, passed an ordinance which, among other things, required the defendant, Jewel Tea Company, a West Virginia corporation maintaining two automobile trucks for the delivery of its products within the City of Augusta, Georgia, said products and merchandise being sold at retail, "to give bond approved by the collector and paymaster in the sum of $2000 dollars or file liability policy." The defendant was found guilty in the recorder's court of the City of Augusta of violating the above-quoted portion of the said ordinance. To the judgment overruling and denying its certiorari to the superior court, the defendant excepts.

The defendant contends that the City of Augusta had no authority under its charter to enact such an ordinance requiring the giving of bond or filing of a liability insurance policy. The question therefore arises whether the above-quoted charter provision grants to the City of Augusta the power to pass an ordinance requiring the giving of a bond or filing a liability policy; for in the absence of such a grant by or authority coming from the legislature to the municipality, it did not have the power to pass such an ordinance. " 'It is a general and undisputed proposition of law that a municipal corporation possesses, and can exercise, the

following powers, and no others: first, those granted in express words; second, those necessarily or fairly implied; third, those essential to the declared objects and purposes of the corporation—not simply convenient but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation and the power is denied. . . An ordinance can not legally be made which contravenes a common right, unless the power to do so be plainly conferred by a valid and competent legislative grant; . . ' " State v. Gulledge, 208 N. C. 204 (179 S. E. 883).

The general-welfare clause of the charter of the City of Augusta to make ordinances respecting its streets and, in general, every other regulation for the security, welfare, and convenience of the city, can not be justly construed as an intention by the legislature to authorize the adoption of the ordinance here in question which established a new public policy in so far as city governments are concerned, and, hence, is unknown in the general legislation of the State with reference to the granting of powers to municipalities. Indeed, the legislative grant in the charter was made on January 31, 1798, which was long before the existence of automobiles of any kind. But even if the word automobiles had been included along with the words "carriages, wagons, carts, drays," we do not think the city would have even then been authorized, under the general-welfare clause, to establish the ordinance requiring the giving of a bond or the filing of a policy of liability insurance before the owner could use the streets for the transportation and delivery of his goods from his place of business. If the city was authorized to require such a bond or insurance policy before he could transport his own goods from his place of business in an automobile, it would seem that the municipality was authorized to make similar requirements of any one who operates carriages, wagons, carts, or drays. If the general-welfare provision of the charter, which makes regulations for the security, welfare, and convenience of said city, authorized the requirement of an indemnity from the owners of automobiles, it might likewise authorize the requirement of such a bond and insurance policy from any one engaged in any business or profession for the protection of the public from damages resulting from any tortious act of such person so engaged. It should be borne in mind that "a municipal corpo-

ration, under its general powers, has the right to make the distinction between those operators of automobiles who use the streets for ordinary purposes and those who use them in pursuit of their occupation or business." Pond on Public Utilities, 108, § 87. This principle has been followed in *Schlesinger* v. *Atlanta,* supra, and other Georgia cases, and the rule with reference to those who use the streets in pursuit of their occupation or business was applied to operators of "jitneys or busses."

However, a different rule is applicable where the ordinary use of streets is for travel or for transportation of goods by the owners thereof to and from their residences or places of business, this being the exercise of a right common to all. "The conduct of the business of a carrier of passengers for hire over the streets of a city is a mere privilege, and not a natural or inherent right of the individual conducting such business. Being a privilege, it can be given or withheld; and may be given to members of one class and denied to those of another class." *Schlesinger* v. *Atlanta,* supra. However, in the instant case, the owner has a common, natural, and inherent right to transport his goods from his place of business, and while such transportation may be regulated, the power to do so must be plainly conferred by a valid and competent legislative grant. The distinction between these two classes of cases is well expressed in Ex Parte Dickey, 76 W. Va. 576 (85 S. E. 781, L. R. A. 1915F, 840), as follows: "The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stagecoach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual, and extraordinary. As to the former, the extent of legislative power is that of regulation; but as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature." See also Quig *v.* State, 84 Fla. 164 (93 So. 139); Pond on Public Utilities, 510, § 499. In the instant case the rule as to the use of the streets for ordinary purposes should be applied, and not the rule as to the use of the streets in pursuit of the occupation or business of the operator.

In the case at bar, the power to restrict, by requiring a bond or the filing of a policy of liability insurance, the inherent right of the owner of goods to transport them from his place of business, is not granted to the City of Augusta by express words in its charter, and we do not think such authority can be fairly implied from the words of the charter provision, or that such authority is essential to the declared objects and purposes of the corporation. We therefore hold that the superior court erred in overruling and denying the certiorari. The defendant could not be found guilty of violating such provision of such an ordinance.

Since we are of the opinion that the City of Augusta was without power or authority under its charter or general law to adopt the ordinance under which the defendant was found guilty, it is unnecessary to decide the other exceptions in this case.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J. In this case there was an agreed statement of facts which was as follows: *"That the defendant, Jewel Tea Company, Incorporated, a West Virginia corporation maintains two automobile trucks for the delivery of its products within the city of Augusta, Georgia, said products and merchandise having been sold at retail* [italics ours]; that defendant has obtained licenses for the year 1937 from the State of Georgia to operate two trucks, the license tag numbers being No. 9 and No. 20 for 1937; that the defendant has paid all State taxes and licenses of all kinds and also as required under the Georgia motor-vehicle act of 1927; that the defendant applied to the city council of Augusta and obtained business licenses for the conduct of its business as aforesaid and has paid all taxes, licenses, and assessments that are charged against it and due, and has complied with all ordinances relating to it by said license ordinances except the giving of bond or filing a liability-insurance policy as required under section 8 of the business license ordinance No. 1088 of 1937, and approved by council on the 7th day of December, 1936, said section being as follows:" There follows a copy of the ordinance alleged to have been violated, and then follows a recital that the defendant was arrested and a case made against it and that the defendant admitted having failed and refused to give bond or to file a liability policy as required under said ordinance; that to obtain a bond as provided in

said ordinance would cost the defendant $20 per year for each vehicle and to obtain a policy of liability insurance would cost it $40 per year for each vehicle.

The part of the agreed statement of facts with reference to how and when and where the sale of the merchandise was made is as follows: "That the defendant, Jewel Tea Company Inc., a West Virginia corporation, maintains two automobile trucks for the delivery of its products within the City of Augusta, Georgia, said products and merchandise having been sold at retail." Is not this saying that Jewel Tea Company, a corporation of West Virginia maintains two automobile trucks for the delivery of its products and merchandise which were sold at retail (in contradistinction to wholesale) in the City of Augusta? It does not say where the merchandise was sold at retail, whether from a retail store, or whether from a truck, or a cart, or a wagon, or a pack from some one's back. It never occurred to us but that the agreed statement of facts meant that the goods were sold in the usual way at the retail storehouse and then delivered in the trucks of Jewel Tea Company, the defendant, and we decided the case upon this interpretation of the evidence as stated in the agreed statement of facts. It seems that defendant in error in its motion for rehearing conceded that if our interpretation is correct, our decision is correct, but the defendant in error seems to contend that the statement of facts showed that the merchandise was not only delivered by and from the truck, but was actually sold then and there on and from the truck, and that the present case comes in the same category of taxicabs and jitney-bus operators. We can not accept this unusual inference from the statement of facts, but think that the only inference to be drawn from the statement of facts is the one upon which we based our decision in this case.

*Rehearing denied. Broyles, C. J., and Guerry, J., concur.*