A02A0490. CITY OF DECATUR v. DEKALB COUNTY.
(567 SE2d 376)

MILLER, Judge.

The City of Decatur appeals from the trial court's order granting declaratory relief to DeKalb County and a permanent injunction against Decatur, forbidding Decatur from enforcing its zoning, building, and other ordinances with respect to the construction of the DeKalb County courthouse and other county government building projects conducted within Decatur city limits. Despite Decatur's several enumerations of error, the dispositive issue on appeal is whether a county government is exempt from all municipal regulation of construction projects undertaken by the county with respect to county-owned property located within the city and used for governmental purposes. We hold that county government building projects are not subject to city zoning regulations, but that they are subject to other municipal regulation (as indicated by the Georgia legislature). Accordingly, we reverse the trial court's order to the extent that it exempts the county from *all* municipal building regulations beyond zoning regulations.

The record reveals that DeKalb County owns certain property located within the city of Decatur. DeKalb decided to use its property to build the new DeKalb County courthouse and renovate an existing building used for governmental purposes. In the past, DeKalb County had applied for building and other permits from Decatur to commence construction within the city limits. This time, however, DeKalb County accepted a bid from a contractor to commence con-

---

struction on the courthouse before obtaining permits from Decatur and further did not apply for city permits relating to renovations on another DeKalb County government building.

Reacting to threats from Decatur that it would seek to enforce its zoning and building ordinances against DeKalb, DeKalb filed a verified complaint seeking a declaratory judgment and injunctive relief to enjoin Decatur from enforcing these ordinances with respect to DeKalb's governmental building construction projects. The trial court held a hearing on the matter, and at the hearing DeKalb County presented its brief, verified complaint, and legal arguments, but did not present any additional evidence, nor did it introduce the actual ordinances in question into evidence. Reasoning that (1) all of the ordinances that would necessarily apply to the construction projects (i.e., building codes for plumbing, electrical, heating and air conditioning, sanitary sewer, storm water drainage, etc.) fell under the broad category of "zoning," and (2) counties have already been exempted from municipal zoning regulation of property owned by the county and used for a governmental purpose, the court concluded that "as a general rule . . . , municipal ordinances do not control county construction, where the county is performing an essential function of government such as the construction, remodeling or modification of a courthouse or court facilities." The court entered a declaratory judgment in favor of DeKalb and permanently enjoined Decatur from enforcing its zoning and building ordinances with respect to the DeKalb County courthouse and other government building projects. Decatur appeals.

1. Decatur argues that the trial court erred by ruling that Decatur was without jurisdiction to apply or enforce any of its municipal ordinances to property of DeKalb County located within the city and used for governmental purposes. We agree that the trial court erred, but only in part.

The Supreme Court of Georgia has held that county-owned property that is used for governmental purposes is not subject to municipal zoning regulations. *Macon Assn. for Retarded Citizens v. Macon-Bibb County Planning &c. Comm.*, 252 Ga. 484, 489 (4) (314 SE2d 218) (1984). Thus, the trial court did not err by concluding that the DeKalb County courthouse and the other county building at issue were not subject to Decatur zoning requirements. However, we find that the trial court did err by concluding that all other municipal building regulations fell under the broad category of zoning and therefore were unenforceable with respect to the DeKalb County construction as well.

"Zoning" means the power of local governments to provide within their respective territorial boundaries for the zoning

or districting of property for various uses and the prohibition of other or different uses within such zones or districts and for the regulation of development and the improvement of real estate within such zones or districts in accordance with the uses of property for which such zones or districts were established.

OCGA § 36-66-3 (3). Thus, " 'zoning ordinances' are those which regulate by classifying property into separate districts." (Citation and punctuation omitted.) *Fairfax MK, Inc. v. City of Clarkston*, 274 Ga. 520, 521 (1) (555 SE2d 722) (2001).

"[Z]oning is to be distinguished from other regulations with which a developer must comply, such as requirements for a building permit. Each type of regulation is independent of the other and seeks to accomplish its purpose by a different means." (Citations and punctuation omitted.) *Fairfax MK*, supra, 274 Ga. at 520 (1). Even under the Georgia Constitution, municipal powers relating to "zoning" are included in an entirely separate section from supplementary municipal powers relating to the enforcement of "[c]odes, including building, housing, plumbing, and electrical codes" and those involving "[s]torm water and sewage collection and disposal systems." Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (6), (12) (supplementary powers); Ga. Const. of 1983, Art. IX, Sec. II, Par. IV (zoning power). Indeed, unless otherwise provided by law, a county is barred from enforcing its supplementary powers within a municipality, as a municipality is imbued with the task of enforcing its supplementary powers within its own boundaries. Ga. Const. of 1983, Art. IX, Sec. II, Par. III (b) (1).

DeKalb County concedes that the legislature may have intended for municipalities to have the power to enforce fire safety standards with respect to county-owned property located within the municipality and used for governmental purposes. OCGA § 25-2-12 (a) (2) provides that "every [municipality with a population of 45,000 or more] shall be responsible for enforcing [state] fire safety standards within its jurisdiction. . . ." See OCGA § 25-2-12 (a) (1). The only buildings excepted from this municipal enforcement are "hospitals, nursing homes, jails, ambulatory health care centers, . . . penal institutions[,] and . . . buildings and structures which are owned and operated . . . by the *state*. . . ." (Emphasis supplied.) OCGA § 25-2-12 (a) (2). Although DeKalb volunteered below to comply with these codes, under the trial court's order, the county would not be required to comply with such city fire ordinances. According to state statutory law, volunteering to comply was not the county's choice to make, as this is an area within which the legislature has indicated that municipalities have authority to regulate the building activities of counties. See *Crews v. Roger Wahl, C.P.A., P.C.*, 238 Ga. App. 892, 896 (2) (520

SE2d 727) (1999) (in matters of statutory construction, "expressio unius est exclusio alterius (the express mention of one thing implies the exclusion of another) and expressum facit cessare tacitum (if some things are expressly mentioned, the inference is stronger that those omitted were intended to be excluded) . . .") (citation omitted).

Other areas of municipal regulation that may necessarily come into play, particularly with respect to the DeKalb courthouse construction, also indicate a legislative intent for a municipality to have some regulatory powers over such construction. Georgia's Erosion and Sedimentation Act (OCGA § 12-7-1 et seq.) requires that municipalities "adopt . . . comprehensive ordinance[s] establishing the procedures governing land-disturbing activities[1] which are conducted within their . . . boundaries." OCGA § 12-7-4. The construction of a courthouse would seem to necessarily involve excavation and moving of land that would implicate the statute. Under the Act, the only county construction projects that are expressly exempted from some of the statutory requirements are "any road construction or maintenance project, or both, undertaken by any county. . . ." OCGA § 12-7-17 (9). As such an exception clearly does not apply to the DeKalb courthouse construction or other county government building construction, we find that this is yet another area where the legislature has expressed an intent for municipalities to have some authority to regulate the building activities associated with county construction within its boundaries. See *Crews*, supra, 238 Ga. App. at 896 (2). The trial court therefore erred in concluding that DeKalb was not subject to regulation through *any* Decatur ordinances.

We note that to the extent that DeKalb County may have sought below to be exempt from the substantive requirements of the Decatur building ordinances, we cannot consider any such challenge here because DeKalb never introduced these ordinances into evidence and we cannot take judicial notice of them. *Childers v. Richmond County*, 266 Ga. 276, 277 (467 SE2d 176) (1996).

We highly recommend that the parties confer immediately on the issue of the Decatur city ordinances with which DeKalb County must comply with respect to the ongoing DeKalb courthouse construction. The purpose of the statute as enacted by the Georgia legislature was to encourage county and city officials to work coopera-

---

[1] Land-disturbing activities include those activities that may result in soil erosion from wind or water "and the movement of sediments into state water or onto lands within the state, including, but not limited to, clearing, dredging, grading, excavating, transporting, and filling of land. . . ." OCGA § 12-7-3 (10). For purposes of the Act, "state waters" include "any and all rivers, streams, creeks, branches, lakes, reservoirs, ponds, drainage systems, springs, wells, and other bodies of surface or subsurface water, natural or artificial, lying within or forming a part of the boundaries of the state, which are not entirely confined and retained completely upon the property of a single individual. . . ." OCGA § 12-7-3 (14).

tively in resolving issues of regional planning. See, e.g., OCGA § 50-8-30. Through more cooperative efforts, the counties and cities may in the future be able to avoid the very types of lawsuits generated by the events of this case.

2. In light of our holding in Division 1, we need not address Decatur's remaining enumerations.

*Judgment affirmed in part and reversed in part. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 20, 2002 — 

*Wilson, Morton & Downs, Bryan A. Downs, Justin H. Hayes*, for appellant.

*Charles G. Hicks, Joan F. Roach, Jeffrey L. Mann, William J. Linkous III*, for appellee.

*Susan M. Pruett, Ted C. Baggett*, amici curiae.