## A04A1140. COBB COUNTY v. CITY OF SMYRNA.
(606 SE2d 667)

MIKELL, Judge.

This dispute concerns the City of Smyrna's desire to access water lines owned by Cobb County but located in an area annexed by the city. The city filed a declaratory judgment action against the county seeking to extend a county-owned water line in order to serve the city's residents. Ruling on cross-motions for summary judgment, the trial court held that the state constitution[1] and OCGA § 36-34-5 authorized the city "to access, extend and tie on to all water lines within its municipal limits" and that such access did not conflict with OCGA § 36-36-7 (b), which provides that the county's ownership and control of its facilities in an annexed area is not diminished by the annexation. We do not agree with all that is said in the order. Therefore, the order is vacated and the case remanded for the entry of an order consistent with this opinion.

On appeal from the grant or denial of a motion for summary judgment, "this Court conducts a de novo review of the law and the evidence."[2] Further, "we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[3]

So viewed, the record shows that in 1992, the city annexed a portion of unincorporated Cobb County bordering Interstate 285 and River View Road. The Cobb County Water System ("CCWS") has been supplying water to retail customers in the annexed area since 1975. According to an affidavit submitted by Robert Brice, CCWS's director, in support of the county's motion for summary judgment, the CCWS is a regional, comprehensive, integrated system for the delivery of drinking water to its citizens; it consists of over 2,900 miles of pipe and serves over 470,000 people; CCWS plans extend over a period of 50 years and include cost and revenue projections necessary to maintain itself; CCWS's commitments for water and sewer improvements are anticipated to total $1.2 billion from 1995 through 2010; revenue to pay for improvements is derived from CCWS's customers and water and sewerage bonds, and not from general tax revenue; a major goal of the long-range planning is to ensure sufficient operating revenue to meet bond obligations, so that decisions regarding line locations and system expansion depend on whether CCWS can derive revenue from existing or forecasted users; and the county's bond

---

[1] Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (7), (b) (1).

[2] (Citation omitted.) *Gen. Elec. Capital Computer Svcs. v. Gwinnett County Bd. of Tax Assessors*, 240 Ga. App. 629, 630 (1) (523 SE2d 651) (1999).

[3] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

resolutions permit it to sell any part of the CCWS only if the sales would not adversely affect revenues. Brice also averred that a sale of the water line would have a substantial adverse effect upon CCWS's revenue.

According to an affidavit submitted by city council member Charles "Pete" Wood, the city will incur substantial costs in constructing duplicate water lines if the city cannot tie on to the county's lines. In addition, Gordon Kenneth Mortin, who was president of the firm that served as the principal underwriter of the county's water and sewerage revenue bonds during the 1970s and 1980s, averred that allowing the city to tie on to an existing county water line, metering the line and paying the county for the water that flows through the meter will have no adverse effect on the revenues of CCWS. He also concluded that permitting the city to tie on to the county's water line would not constitute a sale or disposal of any part of the CCWS.

The trial court ruled in a prior action between these parties in 1992 that the city has the right to provide water and sewer service to its residents because there is no agreement between the parties regarding water and sewer boundaries. We affirmed that decision without opinion.[4] Since that time, the county has declined to permit the city to access the county's water lines in order to serve the city's residents. At the time of the annexation, the property was largely undeveloped, but apparently a development was planned in 2001, causing these parties to argue over the revenue to be derived from the provision of water services.

After hearing argument, the trial court granted summary judgment to the city. The court held that, pursuant to Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (7) and (b) (1), the city has the right to deliver water to its citizens, and the county may not provide water services within the city limits unless authorized by law; that OCGA § 36-34-5 (1), which grants a municipal corporation the power to "extend any water system" within its boundaries, authorized the city to tie on to the county's water lines; and that the county's "ownership and control" of its water lines is not diminished or otherwise affected, as contemplated by OCGA § 36-36-7 (b), by the city's access to, or extension of, the county's water lines within municipal boundaries. Finally, the trial court concluded that permitting the city to tie on to the county's water lines, rather than building parallel lines, is consistent with the purpose of OCGA § 36-70-24, which encourages local governments to develop service delivery strategies and avoid

---

[4] *Cobb County v. City of Smyrna*, 211 Ga. App. XXVII (1993).

duplication. The county assigns error to each of these rulings, arguing that the trial court misconstrued the relevant constitutional and statutory provisions.

1. The county first argues that the trial court's order amounts to judicial nullification of OCGA § 36-36-7 (b), which states that "ownership and control of county owned public properties and facilities are not diminished or otherwise affected by annexation of the area in which the county owned public property or facility is located." The county contends that, by permitting the city to tie on to the county's line, the trial court's order permits the city to exercise dominion and control over the county's property, which is expressly forbidden by OCGA § 36-36-7. In support of its position, the county cites cases standing for the general proposition that "absent fraud or abuse, county authorities have a wide latitude in the exercise of control over public property, so long as that control is exercised for the benefit of the county."[5]

To be sure, the affidavit of CCWS Director Brice is evidence that county authorities are exercising control over the water system for the benefit of the county's residents. In the case at bar, however, we are not dealing with the general power of the county to exercise control over public property. Rather, the present case concerns water rights. On this issue the people have spoken.

The state constitution gives local governments the power to deliver water to their residents.

> (a) In addition to and supplementary of all powers possessed by or conferred upon any county, municipality, or any combination thereof, any county, municipality, or any combination thereof may exercise the following powers and provide the following services: . . . (7) Development, storage, treatment, purification, and distribution of water.[6]

The constitution further instructs that each local government is restricted to providing these services within its own boundaries, in the absence of legislation directing otherwise or a contract with the affected entity. According to the constitution:

> (b) Unless otherwise provided by law . . . [n]o county may . . . provide any [water distribution] service . . . inside the boundaries of any municipality . . . except by contract with

---

[5] *Woodard v. Smith*, 254 Ga. 39, 40 (1) (325 SE2d 377) (1985). See also *Dickey v. Storey*, 262 Ga. 452, 454 (1) (423 SE2d 650) (1992); *Wheeler v. DeKalb County*, 249 Ga. 678, 683 (2) (292 SE2d 855) (1982).

[6] Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (7).

the municipality . . . affected; and . . . [n]o municipality may . . . provide any [water distribution] service . . . outside its own boundaries except by contract with the county . . . affected.[7]

This paragraph of the constitution [subparagraph (a)] is designed to supplement the powers specifically conferred by local law upon each municipality and county in order to make such powers uniform and to reduce the need for special legislation to enable these entities to act, independently or together, in their own best interests. Subparagraph (b), however, allows for individual variations among them which have already been provided by law.[8]

As the county and the city have not entered into any contract that permits the county to distribute water within the city, the issue in this case is whether the county's power to exercise control over its water lines within the city's boundaries already has been provided by law. The answer lies in the interplay between OCGA § 36-36-7 (b) and OCGA § 36-34-5.

In keeping with the constitutional provision cited above, OCGA § 36-34-5 grants to municipalities the power, among other things, "[t]o acquire by gift, by purchase, or by the exercise of the right of eminent domain, to construct, to reconstruct, to improve, to better, and to extend any water system or sewage system, or both, within the municipal corporation."[9] The plain language of this statute gives a municipality the right to extend any water line located within its boundaries by one of the three enumerated methods — gift, purchase, or the exercise of the right of eminent domain.[10]

The power afforded to municipalities pursuant to OCGA § 36-34-5 appears to conflict with the ownership and control retained by the county over its facilities after annexation by the city, as provided by OCGA § 36-36-7 (b). Therefore, we must apply the appropriate rules of statutory construction to resolve the conflict. "[A]ll statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible,

---

[7] Ga. Const. of 1983, Art. IX, Sec. II, Par. III (b) (1), (2). See generally *City of Decatur v. DeKalb County*, 256 Ga. App. 46, 48 (1) (567 SE2d 376) (2002).

[8] *Coweta County v. City of Newnan*, 253 Ga. 457, 459 (1) (320 SE2d 747) (1984).

[9] OCGA § 36-34-5 (1).

[10] See *Six Flags Over Ga. II v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003) ("Where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.") (citation omitted).

so as to ascertain the legislative intendment and give effect thereto."[11] In addition, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any inconsistency between them.[12] Construing these statutes in pari materia, the statute dealing with the general effect of annexation upon county-owned property, OCGA § 36-36-7 (b), must yield to the specific law empowering the municipality to extend any water line located within its boundaries, either by gift, by purchase, or by the exercise of the right of eminent domain.

Therefore, the trial court correctly determined that the city has the right to "extend any" water lines located within its boundaries, even if such lines are owned by the county. But we are troubled by the implication in the lower court's order that the city need not purchase access to the line in question or use its power of eminent domain to obtain such access. "A grant of power to a municipal corporation must be strictly construed."[13] Strictly construing the power granted to the city by OCGA § 36-34-5, we hold that the city cannot extend, or obtain access to, the line in question absent compliance with one of the three methods enumerated therein. For this reason, the court's order is vacated and the case is remanded for the entry of an order consistent with this opinion.

2. The county additionally contends that the trial court's ruling runs afoul of the Service Delivery Act, OCGA § 36-70-20 et seq. The statutory scheme requires local governments to engage in a process to reach service delivery strategy agreements. The General Assembly's stated purpose in enacting the law was to

> minimize inefficiencies resulting from duplication of services and competition between local governments and to provide a mechanism to resolve disputes over local government service delivery, funding equity, and land use. The local government service delivery process should result in the minimization of noncompatible municipal and county land use plans and in a simple, concise agreement describing which local governments will provide which service in specified areas within a county and how provision of such services

---

[11] *Ryan v. Commrs. of Chatham County*, 203 Ga. 730, 731-732 (1) (48 SE2d 86) (1948). See also *Baum v. Moore*, 230 Ga. App. 255, 257 (496 SE2d 307) (1998).

[12] *Ga. Mental Health Institute v. Brady*, 263 Ga. 591, 592 (2) (436 SE2d 219) (1993); *First Nat. Bank of Atlanta v. Sinkler*, 170 Ga. App. 668, 670 (1) (317 SE2d 897) (1984).

[13] (Citation omitted.) *Monticello, Ltd. v. City of Atlanta*, 231 Ga. App. 382, 384 (1) (499 SE2d 157) (1998). See also *City of Macon v. Walker*, 204 Ga. 810, 812 (2) (51 SE2d 633) (1949); *Jewel Tea Co. v. City Council of Augusta*, 59 Ga. App. 260, 262 (200 SE 503) (1938); *Ga. R. &c. v. R. Comm. of Ga.*, 149 Ga. 1, 12 (98 SE 696) (1919).

will be funded.[14]

Consonant with this purpose, OCGA § 36-70-25.1 mandates a dispute resolution procedure for the affected county and municipality to follow if they cannot agree on a service delivery strategy. The county argues that the trial court's ruling permits the city to bypass this procedure, such that the current dispute is not ripe for review.

We note that the county took a different position on this issue in the trial court. In its motion for summary judgment, the county stated: "Independent from, but related to the issues involved in this case, Cobb County and Smyrna are currently under negotiations, pursuant to OCGA § 36-70-20 et seq., to develop service delivery strategy for water and sewerage services in areas within Cobb County that are also part of incorporated Smyrna." The county further asserted that OCGA § 36-70-20 et seq. was not relevant to this dispute.

We agree with the position taken by the county in the trial court. The Service Delivery Act does not affect the threshold question of whether, and by what method, the city may extend a water line owned by the county in the annexed area. The Act may require the parties to agree upon a strategy for the coordination of water services, including the amount by which the city will be required to compensate the county in order to access the affected line. In addition, the county's contentions that its bond resolution and the CCWS's financial base will be adversely affected are appropriate subjects for discussions mandated by the Act. But they do not affect the decision we reach today.

*Judgment vacated and case remanded. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 16, 2004.

*McKenna, Long & Aldridge, Edward A. Kazmarek, Roy E. Barnes,* for appellant.

*Cauthorn & Nohr, Thomas E. Cauthorn III, Melissa M. Nohr, Cochran, Camp & Snipes, Scott A. Cochran,* for appellee.

---

[14] OCGA § 36-70-20. See generally *Higdon v. City of Senoia,* 273 Ga. 83 (538 SE2d 39) (2000).