295 Ga. 16
FINAL COPY

S14A0114. FULTON COUNTY et al. v. CITY OF SANDY SPRINGS et al.

MELTON, Justice.

On December 9, 2010, the City of Sandy Springs and two individual homeowners, John E. Balsam and Jerry Burnstein (collectively Sandy Springs) filed suit against Fulton County, its Board of Commissioners, and its Director of Public Works. Specifically, Sandy Springs filed a petition for declaratory judgment, mandamus, and injunctive relief in which it asked the trial court to determine that Fulton County retained ownership of and responsibility for two drainage retention ponds and a dam located within Sandy Springs. On June 21, 2013, following a bench trial, the trial court found in favor of Sandy Springs, and Fulton County now appeals, contending that it is prohibited from maintaining the detention ponds pursuant to the Georgia Constitution. For the reasons set forth below, we affirm in part and reverse in part.

The record shows that, in 1976, the land that is now Sandy Springs was a part of unincorporated Fulton County. As a result of drainage problems in and around Arlington Cemetery, several homeowners threatened Fulton County with

a lawsuit. As part of the negotiations with the homeowners, Fulton County agreed to construct two detention ponds on the grounds of Arlington Cemetery. To accomplish this goal, Fulton County was granted two easements in order to build and maintain the water detention ponds. One easement grants the "right to erect, construct, reconstruct, replace, remove, maintain and use on said described property a dam and detention pond as [Fulton County] shall from time to time require as part of the public drainage system." The easements "further grant[ ] to [Fulton County] the right of ingress to and egress from said described easement property over and across the land."[1] In addition to these easements, Fulton County also condemned a small parcel of land to enable construction of the ponds.

On December 1, 2005, Sandy Springs came into existence pursuant to House Bill 37 of the Georgia General Assembly. Some time thereafter, homeowners began experiencing water problems which were traced back to the detention ponds at Arlington Cemetery. The dam and ponds were in disrepair and, apparently, had been wholly neglected for a long period of time. Testimony

---

[1] Both easements grant similar rights.

indicated that, until the drainage problems recurred, both Sandy Springs and Fulton County may have forgotten about the existence of the drainage ponds. It is undisputed that Fulton County still owns the easements in question, and it has done nothing to transfer them. Based on these facts, the trial court granted Sandy Springs's petition, finding that Fulton County retained an obligation to maintain the dam and ponds it built. We agree.

As a general rule, "the holder of an easement is responsible for repairs to the easement when the use of the easement is impaired due to lack of maintenance." Equitable Life Assurance v. Tinsley Mill Village, 249 Ga, 769, 771 (1) (294 SE2d 495) (1982). Moreover, the easements in question explicitly enable maintenance to be performed by Fulton County. Under these circumstances, the trial court properly ruled that, as long as the easements are held by Fulton County, it has the responsibility to maintain them.

Fulton County nonetheless contends that it is prohibited from maintaining the easements by Article IX, Section II, Paragraph III of the Georgia Constitution, which provides:

> (a) In addition to and supplementary of all powers possessed by or conferred upon any county, municipality, or any combination thereof, any county, municipality, or any combination thereof may

3

exercise the following powers and provide the following services . . . : (6) Storm water and sewage collection and disposal systems.. . . . (b) Unless otherwise provided by law, (1) No county may exercise any of the powers listed in subparagraph (a) of this Paragraph or provide any service listed therein inside the boundaries of any municipality or any other county except by contract within the municipality or county affected. . . .

Fulton County's reliance on this constitutional provision is misplaced. Fulton County is not being required to provide Sandy Springs with an ongoing "storm water and sewage collection and disposal system" in the absence of an intergovernmental contract. As it stands right now, Fulton County continues to own the easements. Until its easement is legally transferred, terminated, or abandoned, Fulton County is merely being required to maintain those structures it previously decided to build.[2]

Fulton County also argues that its easement to build and maintain the ponds and dam were automatically terminated by the creation of Sandy Springs. To support this argument, Fulton County points to statutory provisions which

_____

[2] Fulton County vehemently argues that its rights under the easement are not exclusive; therefore, it should not be exclusively required to maintain the ponds and dam. This argument misses the mark. Fulton County decided to exercise its right to build the dam and the ponds, and it must currently maintain the structures.

4

automatically transfer ownership of roads and rights of way to new muncipalities. See OCGA § 36-36-7. As Fulton County concedes, however, this statutory provision does not encompass property interests generally. Indeed, property such as parks and public buildings must be separately transferred from one entity to the other. See OCGA § 36-31-11.1. Fulton County has pointed out no statute or law which would indicate that an easement over private property automatically terminates when a city has been created.[3]

We note that, in a supplemental brief, Fulton County contends that is has abandoned the easements. Fulton County did not raise the issue of abandonment in its enumerations before this Court, and it stressed at oral argument that its contentions were constitutionally based. Fulton County did raise an abandonment argument in a motion for summary judgment below. The trial court, in its order on the summary judgment motion, rejected Fulton County's

---

[3] Although an easement may terminate by operation of law when there has been a merger of the dominant and servient estate, there has been no such merger in this case. "[W]here there is a union of an absolute title to and possession of the dominant and servient estates in the same person, it operates to extinguish any such easement absolutely and forever, for the single reason that no man can have an easement in his own land. [Cits.]" (Punctuation omitted) Muscogee Mfg. Co. v. Eagle & Phenix Mills, 126 Ga. 210, 218-219 (54 SE 1028) (1906).

abandonment argument. The trial court did so by citing <u>Whipple v. Hatcher</u>, 283 Ga. 309, 310 (658 SE2d 585) (2008), for the proposition that "an easement acquired by grant is not extinguished merely by nonuse; there must be clear, unequivocal, and decisive evidence of an intent to abandon the easement." At the subsequent bench trial, Fulton County did not argue abandonment. Therefore, to the extent that it now attempts to argue that its *past* conduct constitutes abandonment, this issue is waived for purposes of this appeal.

Under the present circumstances of this case, we find that Fulton County retains current ownership of and responsibility for the easements it holds over the dam and retention ponds located in Sandy Springs. As stated previously, however, any concomitant responsibility continues *only* until the easements at issue are legally transferred, terminated, or prospectively abandoned. As a result, to the extent that the trial court's order may be read to indicate that Fulton County has to maintain the easements in perpetuity, it must be reversed.

<u>Judgment affirmed in part and reversed in part. All the Justices concur, except Benham, J., who dissents.</u>

BENHAM, Justice, dissenting.

As recited in the majority opinion, one of the easements in this case granted Fulton County the right to construct the dams and retention ponds involved in this dispute as "require[d] as part of the public drainage system." The trial court found in its order denying summary judgment to Fulton County that both easements were granted for this purpose. Both easements conveyed the right to enter onto the land to construct and maintain these storm water detention facilities.[1] It appears that Fulton County undertook the construction of these facilities pursuant to the authority granted to it by what is now found in the 1983 Constitution, Article IX, Section II, Paragraph III (a) (6), to provide

---

[1] The majority opinion references the fact that Fulton County agreed to construct the two detention ponds as part of negotiations with certain homeowners who had threatened a lawsuit against the County. The factual findings set forth in the trial court's judgment includes the finding that, as the result of a settlement of the homeowners' demands, Fulton County was contractually obligated to construct the storm water detention facilities it built on these easements. The judgment is also based, in part, upon the legal conclusion that Fulton County is contractually obligated to maintain these facilities. In fact, the evidence shows no lawsuit was actually filed and the resolution of the dispute was apparently a voluntary undertaking of Fulton County's duty or authority to provide such services to the County and was not part of an enforceable agreement or settlement. Further, the record reflects the resolution was part of a joint effort involving not just Fulton County but also the owner of the land on which the ponds were built as well as the developer of the residential subdivision impacted by the water runoff problem. I see no evidence to support the legal conclusion that Fulton County assumed a contractual duty to maintain the facilities it built on its easements.

storm water and sewage collection and disposal systems to what was, at that time, an unincorporated area of the county. Now that these storm water detention facilities are no longer located within unincorporated Fulton County, the County is no longer obligated to provide these facilities; in fact, the County is constitutionally prohibited from maintaining these facilities except by contract with Sandy Springs or unless otherwise provided by law.[2] See Ga. Const. of 1983, Art. IX, Sec. II, Par. III (b) (1); *Cobb County v. City of Smyrna*, 270 Ga. App. 471, 473 (1) (a) (606 SE2d 667) (2004) (pursuant to this constitutional provision, each local government is restricted to providing the services enumerated in it only within that government's boundaries). Further, pursuant to a local constitutional amendment applicable specifically to Fulton County, the governmental authority of Fulton County was limited in various ways (Ga. L. 1951, p. 828, ratified Nov. 4, 1952, as amended by Ga. L. 1953, Nov.-Dec. Sess., p. 144), including prohibiting Fulton County from rendering, among other things, sewage and drainage systems "inside any incorporated area within its

---

[2] No evidence was presented that these detention ponds provide storm sewer service to any territory within unincorporated Fulton County or that they connect in any way with any facilities serving unincorporated Fulton County. Instead, the evidence supports the conclusion that these two ponds serve only the immediate neighborhood, which is now within the limits of Sandy Springs.

2

boundaries." Id. at Sec. 1. The 1951 local amendment also granted the General Assembly authority to prescribe by general or special laws the powers of Fulton County, and in 1986, the General Assembly enacted a local and special act that continued in force and effect the limitations upon Fulton County's governmental authority that were contained in the 1951 local constitutional amendment. Ga. L. 1986, p. 4442.

The majority opinion states that its holding only requires Fulton County to retain responsibility for the easements and to maintain the structures it built until such time as the easements are "legally transferred, terminated, or prospectively abandoned." But this ignores the reality that Sandy Springs, as evidenced by its complaint, disclaims the duty to repair or maintain these facilities. I can think of no way for Fulton County to unilaterally terminate the easements and transfer them to Sandy Springs since Sandy Springs does not want them. Further, the majority ignores the "Catch 22" in which Fulton County is placed by its holding with respect to termination or abandonment of the easements. As long as the County is required to maintain these facilities in working order, this effectively prevents the County from abandoning the easements. Even if, as the trial court ruled, more than just Fulton County's

3

continued nonuse of the easements is required to show its express intent to abandon them in this case, requiring the County to continue to use the easements by maintaining them would seem to prevent it from ever expressly abandoning them.

Most importantly, the majority opinion also ignores the reality that requiring Fulton County to maintain these facilities does, indeed, effectively require the County to provide the very services that it is prohibited by law from providing. This is because it appears from the allegations in the complaint and the record that the act of maintaining the facilities Fulton County originally constructed to collect and control storm water runoff is synonymous with providing the service of "storm water and sewage collection and disposal systems," as that term is used in the constitutional provision that now prohibits Fulton County from providing that service. See Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (6) and (b) (1).

I agree that the creation of Sandy Springs did not automatically terminate these easements and that the easements were not transferred to Sandy Springs upon the city's creation. But that is not the issue raised by this case. The easements simply permit Fulton County to enter onto the property owned by

4

another to construct and maintain the facilities it built. By law, it is no longer permitted to provide the storm water detention services that these facilities were built to provide. As with any contract, an express easement is to be construed pursuant to its plain language. See *Irvin v. Laxmi, Inc.*, 266 Ga. 204 (1) (467 SE2d 510) (1996). The easements themselves do not require Fulton County to construct or maintain any facility at all; they simply provided the County with the legal right of access, as well as right of use of the property, to fulfill the duty of providing the storm sewer services it assumed at the time it acquired these easements. The easements granted to Fulton County are merely permissive and not mandatory, and the grantee, Fulton County, is not required to use them. Compare *Owens Hardware Co. v. Walters*, 210 Ga. 321 (80 SE2d 285) (1954) (no duty is cast upon the owner of an easement acquired by grant or deed to use the easement as a condition to retaining his interest in it).

The majority relies upon *Equitable Life Assurance Society fo the U. S. v. Tinsley Mill Village*, 249 Ga. 769, 771 (1) (294 SE2d 495) (1982), for the proposition that Fulton County, as the holder of these easements, has a duty to repair them. But the *Equitable* case stands for the unremarkable proposition that the holder of an easement, and not the owner of the property over which the

5

easement crosses, is responsible for making repairs to the easement so that the holder of the easement may use it.[3] Compare *Puryear v. Clements*, 53 Ga. 232 (1874) (the plaintiffs, holders of a prescriptive easement to use a private way that defendant established and paid for, could not require the defendant to repair a causeway for the plaintiffs' benefit but the defendant could not prevent the plaintiffs from rebuilding it for themselves). That is not the issue in this case. Fulton County has not sued the owner of the property to make repairs to its own easements; Fulton County is not using these easements and, under the circumstances involved in this case, cannot be required to continue to use them. Despite language to the contrary, the effect of the majority opinion is to require Fulton County to maintain these facilities and thereby provide storm water detention services to a territory that is not within unincorporated Fulton County, which the County is prohibited by law to provide.

---

[3] In the *Equitable* case, condominium homeowners who held an easement in a road over a creekbed that dissected the condominium property sued the successors in interest to the original developer of the complex which had retained ownership of the creekbed and built the culvert under the road, through which water flowed. The homeowners sued for damages from flooding they alleged was caused by negligent construction and maintenance of the culvert. The defendants contended the owners were the ones that were responsible for maintaining the culverts because they were part of the easement over the creek. This Court noted that although the holders of an easement are generally responsible for maintaining their own easement, this rule did not apply to bar the homeowners' action because they were not suing for repairs to their own easement but for damages arising from the creation of a nuisance created by the overflowing water from the creek. 249 Ga. at 771.

6

It may be that, as a general proposition, the holder of an easement who constructs a structure on the property has a duty to maintain that structure to the extent that the holder remains liable for any nuisance created by it or for damages created by its failure even after the holder claims it has abandoned the easement.[4] Further, municipalities in this State have been held liable for damages to property arising from improper maintenance of storm sewers constructed as part of a drainage easement. See *City of Atlanta v. Williams*, 218 Ga. 379 (128 SE2d 41) (1962) (finding the City of Atlanta had a duty to maintain a drainage ditch originally built by Fulton County before the area was incorporated into the City of Atlanta since it claimed a right to use the ditch and was thus liable to the adjoining landowner for damage caused by overflow); *City of College Park v. Pichon*, 217 Ga. App. 53 (456 SE2d 686) (1995) (affirming, in part, an award of damages for the creation of a nuisance by failure to maintain a drainage ditch that was part of the city's drainage system). But the plaintiffs in this case did not seek damages sustained by any nuisance created by Fulton County's failure to maintain the facilities built on the easements. Instead, they

---

[4] See James W. Ely, Jr. & Jon W. Bruce, *Repair, Maintenance, and Improvements – Rights and Duties in General*, Law of Easements & Licenses in Land § 8:37 (2014).

7

sought a declaratory judgment that Fulton County is responsible for repairing and maintaining the storm water detention structures at issue in this case to keep them working as storm sewers, and a mandamus order requiring Fulton County officials to do so. The unique facts of this case prohibit Fulton County from maintaining these structures because, as noted above, as a practical matter, to maintain these structures is to supply the services the County is prohibited by law from supplying. Their only function is to supply storm water collection and disposal services. This is not to say that Fulton County is barred from liability for damages proximately caused by any nuisance created by its failure to maintain the structures it built. See *City of Atlanta v. Williams*, supra; *City of College Park v. Pichon*, supra. But I believe it is important to make the distinction between potential liability for damages created by maintaining a nuisance on an easement and the duty to maintain storm sewer services that the trial court's judgment, and the majority opinion, effectively require Fulton County to provide even though it is legally barred from providing those services.

While Sandy Springs currently does not own easements to enter onto the private property on which the ponds are located, there is nothing to prevent it

8

from obtaining the necessary easements. That is what Fulton County did in order to fulfill its obligation to provide storm sewer facilities, and now the obligation to provide such services to territories within its incorporated limits is that of Sandy Springs. Presumably, Fulton County would be willing to assign the easements to Sandy Springs.[5] Alternatively, Sandy Springs may enter into an intergovernmental contract with Fulton County to provide storm sewer services to Sandy Springs by maintaining these facilities, as contemplated by Article IX, Section II, Paragraph III (b) (1) of the Constitution. The solution to the problem of storm water runoff in the affected incorporated territory is one that Sandy Springs must now address since Fulton County is prohibited by law from doing so, whether or not it holds these easements which previously enabled it to provide the solution.

---

[5] Counsel for Sandy Springs stated at the trial court hearing that Fulton County had not offered to transfer the easements to Sandy Springs and had otherwise failed to demonstrate a willingness to resolve the situation; but it also appears from statements of counsel and the record that Sandy Springs has demanded, in any event, that Fulton County first undertake repairs and maintenance to the dam and ponds, and since Fulton County denies it is legally required to perform the services these facilities perform, it is reasonable to assume the County would voluntarily transfer these easements even though it would not agree to undertake any maintenance or repairs to the facilities. The record reflects that, at the time it constructed these facilities, Fulton County acquired a small tract of property from one of the impacted homeowners by condemnation for the purpose of containing occasional overflow of the adjoining retention pond. Nothing prevents Sandy Springs from acquiring this tract, either, if necessary to enable it to assume responsibility for providing storm sewer services to the area just as Fulton County was required to acquire it previously.

In sum, an easement, in and of itself, creates no obligation to use the easement. It simply creates a right to do so. The holder of an easement assumes the risk of liability for damages caused by a nuisance maintained on the property, just as any owner of property does. But Fulton County's potential liability to third parties for damages resulting from its failure to maintain structures it built on these easements, an issue not presented in this case, should not be confused with its duty, now extinguished by law, to continue to provide storm water detention services to the affected homeowners. This is an important legal distinction which I believe the majority misses. Thus, I would reverse the trial court judgment in its entirety.

Decided March 28, 2014.

Mandamus. Fulton Superior Court. Before Judge Newkirk.

Matthew C. Welch, Laura S. Lewis, Larry W. Ramsey, Jr., Kaye W. Burwell, for appellants.

Wendall K. Willard, Lawrence D. Young, for appellees.